**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Alejandro Carrillo, *on behalf of himself and all others similarly situated*,<br>　　　　　　　*Plaintiff*,<br><br>　　　　v.<br><br>Wells Fargo Bank, N.A.,<br>　　　　　　　*Defendant*. | **CLASS ACTION COMPLAINT**<br><br>**JURY DEMANDED HEREON** |

Alejandro Carrillo brings the following Complaint on behalf of himself and the Class:

## NATURE OF ACTION

1. Plaintiff and the Class have residential real estate loans as well as interest rate "buydown agreements" that they entered into with Defendant Wells Fargo Bank, N.A. ("Wells Fargo") regarding the rates applicable to those loans.

2. As disclosed, *inter alia*, in Plaintiff and the Class Members' statutorily required loan Closing Disclosures, their loans are supposed to have a lower interest rate for an initial period followed by a higher interest rate for the remainder of the life of the loan.

3. The lower initial rate is, however, partially or entirely illusory due to Wells Fargo's practice of amortizing the loans at the higher rate even during the initial "buydown" period.

4. In other words, while the monthly payment amount during the initial period appears to be accordance with the lowered rate, interest on the loan during the initial period is actually being accrued at the higher rate.

5. Because Wells Fargo does not amortize the loans at the disclosed lower interest rate during this initial period, Plaintiff and the Class Members have a higher balance at the end of the initial period than would be the case if Wells Fargo applied the disclosed lower initial interest rate.

6. Put differently, borrowers have a higher effective interest rate during the initial period than disclosed and promised by Wells Fargo.

7. The loan Closing Disclosures are not the only misleading documents provided by Wells Fargo in connection with these transactions.

8. Rather, Wells Fargo's Buydown Deposit Agreements with Plaintiff and Class Members fail to clearly disclose that Wells Fargo will continue to amortize the loans at the higher rate even during the initial "buydown" period.

9. Instead, these Buydown Deposit Agreements contain misleading descriptions of "1st Period" principal and interest applicable to the loans.

10. Compounding matters, Wells Fargo has a pattern and practice of inaccurately characterizing the funds used for the "rate buydown" in its Buydown Deposit Agreement as being provided by the consumer when the funds are, in fact, provided by Wells Fargo.

11. Wells Fargo also has a policy and practice of combining the buydown funds it applies toward the loans with other, unrelated monies, when stating the amount of those funds in its Closing Disclosure.

12. The APR and other figures set forth in the Closing Disclosure are also materially misstated, and are inconsistent with the interest rates set forth in the Disclosure.

13. The combined result of these practices is (a) that borrowers do not actually receive the full benefit of the promised and disclosed lower initial interest rate, and (b) that Wells Fargo's misconduct is difficult to detect, as determining how Wells Fargo arrives at the figures in its Closing Disclosure requires the assistance of a forensic accountant and would be extraordinarily difficult and/or impossible for a lay person.

14. Wells Fargo's misconduct violates the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA").

15. Wells Fargo's misconduct also constitutes a breach of contract and violation of New York General Business Law § 349.

## JURISDICTION AND VENUE

16. This Court has federal question jurisdiction under 15 U.S.C. § 1640.

17. This Court also has jurisdiction pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d) because this case is a class action, the class has more than 100 members, the amount in controversy exceeds $5,000,000, and Plaintiff is a citizen of a different state than Defendant.

18. The Court has authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

19. The Court has supplemental jurisdiction over state law claims per 28 U.S.C. § 1367.

20. Venue is proper in this district per 28 U.S.C. § 1391, as the acts, omissions and transactions that give rise to this action occurred, in substantial part, in this district.

21. Venue is also proper in this district because Plaintiff lives in this district, Defendant conducts business in this district and Plaintiff's injury occurred in this district.

## PARTIES

22. At all relevant times, Plaintiff Alejandro Carrillo has resided in either Brooklyn, NY (County of Kings) or Great Neck, New York (County of Nassau), both of which are in the Eastern District of New York.

23. Plaintiff is a "natural person" and a "consumer" as that term is defined under TILA, 15 U.S.C. § 1602(i).

24. Plaintiff's loan was in connection with a residential real estate transaction that was primarily for personal, family or household purposes, and involved the extension of credit.

25. Defendant Wells Fargo is a nationally chartered bank, and is a citizen of South Dakota.

26. Wells Fargo regularly extends consumer credit subject to a finance charge or payable by written agreement in more than four installments and is a creditor as that term is defined under TILA, e.g. 15 U.S.C. § 1602(g).

## NAMED PLAINTIFF'S EXPERIENCE

27. Plaintiff Alejandro Carrillo closed on a real estate loan with Wells Fargo on June 15, 2017.

28. At the time of the closing, Mr. Carrillo lived in Brooklyn.

29. The loan was in connection with Mr. Carrillo's purchase of a residence located in Great Neck, New York.

30. The Closing Disclosure for the transaction, attached hereto as Exhibit A, states on page 1 that the loan has an "Interest Rate" of "2.875 %", and that the rate "Adjusts every year starting in year 2" and "Goes as high as 3.875".

31. The same section of the Closing Disclosure states "See AIR Table on page 4 for details."

32. The "Adjustable Interest Rate (AIR) Table on page four discloses an "Initial Interest Rate" of "2.875%" and a "Minimum/Maximum Interest Rate" of "2.875%/3.875%".

33. These disclosures are false, misleading and inaccurate.

34. Specifically, because Wells Fargo amortized the loan at 3.875% during year one, the loan has a higher balance at the end of year one than would be the case if it were amortized at the disclosed rate of 2.875%. In actuality, the loan has an effective interest rate at year one, of 3.2103% not 2.875%.

35. Mr. Carrillo's pertinent loan closing documents are attached hereto as Exhibits A and B.

36. As a result of amortizing the loan at a higher interest rate during the initial period, Mr. Carrillo's balance has, at all relevant times, including *inter alia*, from the time of his first monthly billing statement forward, been higher than would otherwise have been the case.

37. Mr. Carrillo repeatedly brought this issue to Wells Fargo's attention in writing, providing detailed descriptions of the issue, and requested that Wells Fargo honor the promised rate of 2.875%.

38. Mr. Carrillo's complaints were rejected by Wells Fargo, which – in its written response to Mr. Carrillo -- stood by the method of calculation complained of herein.

39. The APR of 4.174% stated in Mr. Carrillo's Closing Disclosure, as well as the finance charge and total of payments are also materially misstated.

40. Thus, although a primary purpose of Truth-In-Lending Act disclosures is accurate disclosure of the costs of borrowing, neither the interest rates nor the APR listed in the disclosure is accurate, nor are they consistent with one another, rendering the document both confusing and misleading.

41. At the end of Carrillo's first year of payments, the principal balance on his loan was $478.13 higher than it should have been. If Mr. Carrillo were to maintain this loan through maturity and to make all payments as scheduled, he would pay interest on that improperly inflated balance for the next 29 years.

## CLASS ALLEGATIONS

42. The plaintiff, Alejandro Carrillo, brings this action on behalf of himself, and on behalf all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

43. Plaintiff seeks to represent three classes: a TILA class (a national class on whose behalf he seeks statutory damages ); a New York General Business Law class (on whose behalf he seeks actual, treble and punitive damages) and a New York Breach of Contract class (on whose behalf he seeks actual damages).

44. The TILA class is defined as all persons in the United States;

   a. who entered into buydown agreements with Wells Fargo in residential real estate transactions;

   b. within one year prior to the filing of the instant Class Action Complaint;

   c. in which Wells Fargo disclosed in the borrower's loan Closing Disclosure a lower interest rate for an initial period followed by a higher interest rate for the remainder of the life of the loan; and

      d. as to whom, during the initial period, Wells Fargo amortized the loan at a rate higher than the lowest disclosed rate.

45. The New York Breach of Contract class is defined as all persons:

      a. who entered into buydown agreements with Wells Fargo in residential real estate transactions in the State of New York;

      b. within six years prior to the filing of the instant Class Action Complaint;

      c. in which Wells Fargo promised a lower interest rate for an initial period followed by a higher interest rate for the remainder of the life of the loan;

      d. but, during the initial period, amortized the loan at a rate higher than the lowest promised rate;

46. The New York General Business Law class is defined as all persons:

      a. who entered into buydown agreements with Wells Fargo in residential real estate transactions in the State of New York;

      b. within three years prior to the filing of the instant Class Action Complaint;

      c. in which Wells Fargo promised a lower interest rate for an initial period followed by a higher interest rate for the remainder of the life of the loan;

      d. but, during the initial period, amortized the loan at a rate higher than the lowest promised rate;

47. Excluded from each of the classes set forth above is anyone employed by counsel for Plaintiff in this action and any Judge to whom this case is assigned, as well as his or her immediate family and staff.

*Numerosity*

48. The loan documents and disclosures at issue in this case are boilerplate documents.

49. Neither the language nor the form of those documents and disclosures, nor the methods used to calculate the interest rates and other loan data at issue in this litigation materially vary from one consumer to the next.  Wells Fargo uses the same highly automated procedures to generate its disclosures and calculate interest.

50. The rate buydown program at issue in this case has been offered to the general public and each class set forth herein includes hundreds, if not thousands of consumers.

51. As such, the classes are sufficiently numerous that joinder of all members is impractical.

52. Although the exact number of Class members and their addresses are unknown to Plaintiff, they are readily ascertainable from Defendant's records.

*Existence and Predominance of Common Questions*

53. Common questions of law and fact exist as to Plaintiff and all members of the Class and predominate over questions affecting only individual Class members.

54. These common questions include:
    a. whether Wells Fargo has a policy and practice in residential real estate transactions, of amortizing loans at a higher rate during the initial period despite disclosing and/or promising a lower interest rate as applying during that period;
    b. whether this practice violates the Truth In Lending Act;
    c. whether Wells Fargo has a policy and practice of obscuring the policy and practice set forth in subsection 33(a), above, inter alia, by means of use of buydown documents that incorrectly state the nature of the transaction and contain inaccurate descriptions of the interest rate applied to the initial period.

  d. whether the practice of amortizing loans at a rate higher than the promised rate constitutes a breach of contract and/or deceptive business practice under New York law.

*Typicality*

55. Plaintiff's claims are typical of the claims of the classes because Plaintiff is a class member and was subject to the same pattern of misbehavior as other members of the classes.

56. Thus, Plaintiff's claims—based on the same facts and legal theories as the claims of all other class members—are typical of the claims of the class.

*Adequacy*

57. Plaintiff will fairly and adequately represent the interests of the class members. His interests do not conflict with the interests of the members of the Class he seeks to represent.

58. Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why this Plaintiff and his counsel will not vigorously pursue this matter.

*Superiority*

59. The class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

60. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.

61. Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

62. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

63. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64. In the alternative, the Class may be certified because:

    a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

    b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## FIRST CAUSE OF ACTION
*(New York State General Business Law § 349)*

65. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

66. Wells Fargo's practice of overstating consumers' balances by amortizing consumers' balances at a higher interest rate during an initial period during which Wells Fargo has disclosed and/or promised a lower interest rate, and Wells Fargo's practice of billing, collecting and/or attempting to collect on these overstated balances are deceptive acts and practices committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

67. These deceptive acts and practices and constitute a violation of New York General Business Law § 349 independent of whether they also constitute a violation of any other law.

68. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public.

69. Defendant's overstatement of consumers' balances, and its billing, charging, collecting and/or attempting to collect on these overstated balances were false and deceptive and impaired the rights of consumers.

70. Plaintiff and all others similarly situated have been damaged thereby.

71. As a result of Defendant's violations of § 349, Plaintiff and each other member of the Class are entitled to declaratory judgment; an injunction against the offending conduct, actual damages, treble damages up to an additional $1,000 per class member, punitive damages, costs and attorneys' fees.

## SECOND CAUSE OF ACTION
*(Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing)*

72. As consideration for Plaintiff and the Class Members to enter in to loans with Wells Fargo, Wells Fargo agreed that the interest rate on Plaintiff and Class Members' loans would be reduced during the first year.

73. Wells Fargo violated these agreements by amortizing the loans at a higher rate than had been agreed, thereby causing Class Members damage and depriving them of the benefit of the contract.

## THIRD CAUSE OF ACTION
*(Truth In Lending Act, 15 USC §§1601 et seq. ("TILA"))*

74. Wells Fargo is a creditor within the meaning of the TILA, 15 USC § 1602(g) and the relevant implementing regulations set forth in Regulation Z.

75. The residential real estate loans in question are consumer credit transaction within the meaning of the TILA, 15 USC § 1602.

76. Plaintiff was not provided disclosures that conform with the obligations under the TILA and Regulation Z.

77. Specifically, the finance charge, APR and total of payments disclosed in the retail installment contract are all materially misstated, in violation of TILA § 1638(a)(3) through (5) and Regulation Z, e.g. §226.18(b).

78. In addition, Wells Fargo's loan disclosures violate 1638(b)(2)(C)(ii), which states:

(C)  In the case of an extension of credit that is secured by the dwelling of a consumer, under which the annual rate of interest is variable, or with respect to which the regular payments may otherwise be variable, in addition to the other disclosures required by subsection (a), the disclosures provided under this subsection shall do the following:
(ii)

    State in conspicuous type size and format examples of adjustments to the regular required payment on the extension of credit based on the change in the interest rates specified by the contract for such extension of credit. Among the examples required to be provided under this clause is an example that reflects the maximum payment amount of the regular required payments on the extension of credit, based on the maximum interest rate allowed under the contract, in accordance with the rules of the Bureau.

79. Specifically, whereas Plaintiff and the Class Members variable rate disclosures and contracts set forth one interest rate for the initial period, they are effectively charged a higher rate due to Wells Fargo's method of amortization.

80. This method results in a higher balance throughout and at the end of the initial period than should be the case and is not clearly authorized by the contracts at issue.

81. Moreover, as a result of this higher balance, the effective rate for the remainder of the life of the loan is incorrect, does not correspond to the payments required, and is not authorized by the contracts at issue.

82. Defendants thereby violated TILA, 15 USC § 1638(b)(2)(C)(ii).

83. The TILA violations set forth herein were willful, intentional, frequent and persistent.

84. As a result of these violations, pursuant to 15 USC § 1640, Wells Fargo is liable for statutory damages of one million dollars, costs and attorney's fees.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

**WHEREFORE,** Plaintiff and the Class Members respectfully request that this Court provide the following relief:

A. An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing his attorneys as Class Counsel;

B.  A judgment declaring that Defendant has committed the violations of law alleged in this action and an injunction forbidding any future violations;

C.  An award of actual damages, statutory damages, punitive damages, treble damages. attorney's fees and costs;

D.  Such other and further relief that may be just and proper.

Dated: May 25, 2018

SCHLANGER LAW GROUP LLP

*/s/Daniel A. Schlanger*
Daniel A. Schlanger
9 East 40th Street
Suite 1300
New York, NY 10016
T. (212) 500-6114
F. (646) 612-7996
dschlanger@consumerprotection.net

*/s/Beth Ellen Terrell*
Beth Ellen Terrell
(pro hac vice admission in process)
Terrell Marshal Law Group PLLC
936 N 34th St., Suite 300
Seattle, WA 98103
T. (206) 816-6603
F. (206) 319-5450
bterrell@terrellmarshal.com

*Attorneys for Plaintiff*