UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ALEJANDRO CARRILLO, *individually and
on behalf of all others similarly situated*,

                    Plaintiff,

        v.

WELLS FARGO BANK, N.A.,

                    Defendant.

NO. 2:18-cv-03095-SJF-SIL

**PLAINTIFF'S RESPONSE TO DEFENDANT WELLS FARGO
BANK, N.A.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS**

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

AUTHORITY AND ARGUMENT ....................................................................... 4

    I.      Wells Fargo's motion to dismiss should be denied ............................... 4

          A.      Plaintiff states a claim for violation of GBL § 349 ................................... 4

                 1.      Plaintiff alleges consumer-oriented conduct................................. 5

                 2.      Plaintiff alleges misleading conduct ........................................... 10

                 3.      Plaintiff alleges an actionable injury......................................... 13

          B.      Plaintiff states a claim for breach of contract ......................................... 14

          C.      Plaintiff states a claim for violation of the Truth in Lending Act.......... 17

    II.     Wells Fargo's motion to strike should be denied................................. 18

          A.      Plaintiff's proposed classes are not fail-safe classes............................. 19

          B.      Wells Fargo has not shown it will be impossible to demonstrate numerosity.............................................................................................. 20

          C.      Wells Fargo has not shown it will be impossible to demonstrate commonality ......................................................................................... 21

          D.      Wells Fargo has not shown that Plaintiff is atypical or inadequate........ 22

          E.      Wells Fargo has not shown it will be impossible to satisfy Rule 23(b)(3) ............................................................................................... 22

          F.      Wells Fargo has not shown it will be impossible to satisfy 23(b)(1) or (b)(2) ................................................................................................ 25

CONCLUSION................................................................................................... 25

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    568 U.S. 455 (2013)..................................................................................................... 24

*Ault v. J.M. Smucker Co.,*
    No. 13 Civ. 3409 (PAC), 2014 WL 1998235 (S.D.N.Y. May 15, 2014) ...................... 10

*Axiom Inv. Advisors, LLC v. Deutsche Bank, AG,*
    234 F. Supp. 3d 526 (S.D.N.Y. 2017) ........................................................................... 10

*Bank of New York Trust Co. v. Franklin Advisers, Inc.,*
    726 F.3d 269 (2d Cir. 2013)............................................................................................ 16

*Belfiore v. Procter & Gamble Co.,*
    94 F. Supp. 3d 440 (E.D.N.Y. 2015) ............................................................................. 18

*Briceno v. USI Servs. Grp., Inc.,*
    No. 09-cv-4252, 2012 WL 4511626 (E.D.N.Y. Sept. 28, 2012) ................................... 21

*Bristol Village, Inc. v. La.-Pac. Corp.,*
    170 F. Supp. 3d 488 (W.D.N.Y. 2016) .......................................................................... 10

*Brown v. Kelly,*
    609 F.3d 467 (2d Cir. 2010)............................................................................................ 22

*Buonasera v. Honest Co., Inc.,*
    208 F. Supp. 3d 555 (S.D.N.Y. 2016)............................................................................ 10

*Casper Sleep, Inc. v. Mitchum,*
    204 F. Supp. 3d 632 (S.D.N.Y. 2016)............................................................................. 7

*Chen-Oster v. Goldman, Sachs & Co.,*
    877 F. Supp. 2d 113 (S.D.N.Y. 2012)..................................................................... 19, 21

*Chenensky v. New York Life Ins. Co.,*
    No. 07 Civ. 11504 (WHP), 2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011) ............. 22, 23

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013)......................................................................................................... 24

*Consarc Corp. v. Marine Midland Bank, N.A.*,
   996 F.2d 568 (2d Cir. 1993) ....................................................................... 15

*Diaz v. Residential Credit Sol., Inc.*,
   297 F.R.D. 42 (E.D.N.Y. 2014) ................................................................... 20

*DiGangi v. Gov't Emp'rs Ins. Co*,
   No. 13-cv-5627, 2014 WL 3644004 (E.D.N.Y. July 22, 2014) ..................... 14

*Donnenfeld v. Petro, Inc.*,
   No. 17-CV-2310 (JFB) (SIL), 2018 WL 4356727 (E.D.N.Y. Sept. 12, 2018) .............. 14

*Duarte v. Tri-State Phys. Med. & Rehab., P.C.*,
   No. 11 Civ. 3765 (NRB), 2012 WL 2847741 (S.D.N.Y. July 11, 2012) ........... 19, 20, 23

*Frederick v. Capital One Bank (USA), N.A.*,
   14-CV-5460 AJN, 2015 WL 5521769 (S.D.N.Y. Sept. 17, 2015) ................... 9

*Fritz v. Resurgent Cap. Servs., LP*,
   955 F. Supp. 2d 163 (E.D.N.Y. 2013) .......................................................... 6

*Glover v. Udren*,
   No. 08-cv-990, 2013 WL 6237990 (W.D. Pa. Dec. 3, 2013) ........................ 25

*Grant v. N.Y. Times Co.*,
   No. 16-cv-03175 (PKC), 2017 WL 4119279 (S.D.N.Y. Sept. 14, 2017) ........ 25

*Greene v. Gerber Prod. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ....................................................... 18, 19

*Harary v. Allstate Ins. Co.*,
   983 F. Supp. 95 (E.D.N.Y. 1997) ................................................................. 9

*Harte v. Ocwen*,
   No. 13-CV-5410 MKB, 2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014) ........... 7, 8

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ......................................................... 14

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ........................................................................ 24

*Interested Underwriters at Lloyd's of London v. Church Loans & Invs. Trust*,
   432 F. Supp. 2d 330 (S.D.N.Y. 2006) ........................................................ 7, 8

*Kapsis v. Am. Home Mortg. Servicing Inc.*,
    923 F. Supp. 2d 430 (E.D.N.Y. 2013) ............................................................... 7

*Kelen v. World Fin. Network Nat'l Bank*,
    295 F.R.D. 87 (S.D.N.Y. 2013) ...................................................................... 24

*Kindle v. Dejana*,
    315 F.R.D. 7 (E.D.N.Y. 2016) ........................................................................ 20

*Koch v. Greenberg*,
    14 F. Supp. 3d 247 (S.D.N.Y. 2014).................................................................. 5

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) .................................................................... 21

*Kwon v. Satander Consumer U.S.A.*,
    No. 15-cv-3342, 2016 WL 6518578 (E.D.N.Y. Oct. 6, 2016) ........................ 8

*Lane v. Wells Fargo Bank, N.A.*,
    No. C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013).......... 24

*Lloyd v. Indus. Bio-Test Labs., Inc.*,
    454 F. Supp. 807 (S.D.N.Y. 1978).................................................................. 21

*M & T Mortg. Corp. v. White*,
    736 F. Supp. 2d 538 (E.D.N.Y. 2010) .............................................................. 7

*MacGee v. Paul Revere Life Ins. Co.*,
    954 F. Supp. 582 (E.D.N.Y. 1997) ................................................................... 9

*Mata v. CitiMortgage, Inc.*,
    No. 10-cv-9167, 2012 WL 7985175 (C.D. Cal. July 20, 2012).................... 25

*Mayfield v. Asta Funding, Inc.*,
    95 F. Supp. 3d 685 (S.D.N.Y. 2015)................................................................. 5

*Mazzei v. Money Store*,
    288 F.R.D. 45 (S.D.N.Y. 2012) ................................................................ 19, 20

*Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*,
    No. 16-CV-5265 (JPO), 2018 WL 1773142 (S.D.N.Y. Apr. 12, 2018) .................. 22, 23

*Mendez v. Bank of Am. Home Loan Services, LP*,
    840 F. Supp. 2d 639 (E.D.N.Y. 2012) ............................................................ 13

*Miller v. HSBC Bank U.S.A., N.A.*,
    No.13 Civ. 7500, 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015) ..................................... 9

*Moore v. Apple Inc.*,
    No. 14-cv-02269-LHK, 2015 WL 7351464 (N.D. Cal. Nov. 20, 2015)........................ 24

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ............................................................................. 9

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
    875 F.3d 107 (2d Cir. 2017)............................................................................ 5, 7, 10, 13

*Orlander v. Staples*,
    802 F.3d 289 (2d Cir. 2015)................................................................... 10, 11, 14, 15, 16

*Owens v. Aspen Funding LLC*,
    No. 08-cv-6588, 2011 WL 4024820 (W.D.N.Y. Sept. 9, 2011).............................. 12, 13

*Pandit v. Saxon Mortg. Servs., Inc.*,
    No. 11-CV-3935(JS) (GRB), 2012 WL 4174888 (E.D.N.Y. Sept. 17, 2012) ................. 8

*Parker v. Time Warner Entm't Co., L.P.*,
    331 F.3d 13 (2d Cir. 2003)........................................................................................ 23, 25

*Pecere v. Empire Blue Cross & Blue Shield*,
    194 F.R.D. 66 (E.D.N.Y. 2000) .................................................................................... 21

*Perez v. First Am. Title Ins. Co.*,
    No. 08-cv-1184, 2009 WL 2486003 (D. Ariz. Aug. 12, 2009) ..................................... 24

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)........................................................................... 10

*Roach v. T.L. Cannon Corp.*,
    No. 10-cv-591, 2015 WL 10818750 (N.D.N.Y. Sept. 4, 2015)..................................... 22

*Rozier v. Fin. Recovery Sys., Inc.*,
    No. 10-CV-3273 (DLI) (JO), 2011 WL 2295116 (E.D.N.Y. June 7, 2011)..................... 8

*Schwartz v. Upper Deck Co.*,
    183 F.R.D. 672 (S.D. Cal. 1999) .................................................................................. 21

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009)...................................................................................... 13, 14

*Spinelli v. Nat'l Football League*,
  903 F.3d 185 (2d Cir. 2018) ................................................................... 17

*Spread Ent., Inc. v. First Data Merchant Servs. Corp.*,
  298 F.R.D. 54 (E.D.N.Y. 2014) ........................................................ 19, 20

*Stephens v. Capital One Fin. Corp.*,
  No. 12-cv-00193, 2012 WL 2458173 (E.D.N.Y. June 22, 2012) ................. 13

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ..................................................................... 24

*Thyroff v. Nationwide Mut. Ins. Co.*,
  460 F.3d 400 (2d Cir. 2006) ................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................... 21

*Williams v. CitiMortgage, Inc.*,
  No. 13-cv-354, 2014 WL 1406601 (W.D. Okla. Apr. 10, 2014) ............ 20, 21

## STATE CASES

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
  773 N.E.2d 496 (N.Y. 2002) ................................................................... 17

*Koch v. Acker, Merrall & Condit Co.*,
  18 N.Y.3d 940 (N.Y. 2012) ..................................................................... 14

*Korn v. First UNUM Life Ins. Co.*,
  717 N.Y.S.2d 606 (N.Y. 2000) .................................................................. 9

*New York Univ. v. Cont'l Ins. Co.*,
  87 N.Y.2d 308 (N.Y. 1995) ....................................................................... 8

*Oswego Laborers' Local 214 Pension Fund v. Marina Midland Bank*,
  647 N.E.2d 741 (N.Y. 1995) ........................................................... 5, 6, 11

*Teller v. Bill Hayes, Ltd.*,
  630 N.Y.S.2d 769 (N.Y. App. Div. 1995) ................................................ 5, 8

*Village of Ilion v. County of Herkimer*,
  18 N.E.3d 359 (N.Y. 2014) ..................................................................... 15

## FEDERAL STATUTES

15 U.S.C. § 1638(b)(2)(C)(ii) ................................................................................ 17

## STATE STATUTES

N.Y. Gen. Bus. Law § 349 .................................................................................*Passim*

# INTRODUCTION

This is a case about misrepresentation. Wells Fargo's standardized loan documents and disclosures represent that consumers are paying a lower interest rate than Wells Fargo actually charges them. This overcharge is not the result of an honest mistake. Wells Fargo knowingly amortizes the loans at a higher interest rate than the rate in the loan documents and disclosures.

Wells Fargo offers consumers the opportunity to buy down the interest rate for the first year of their real estate loans. Wells Fargo gives consumers a closing disclosure that prominently displays the lower interest rate. Wells Fargo offers the lower interest rate through a form buydown agreement that attaches a buydown payment schedule showing the same lower buydown interest rate. But Wells Fargo does not use the represented lower interest rate in amortizing consumers' loans. It uses a higher interest rate. Wells Fargo then collects a lower monthly payment that "corresponds" to the lower interest rate during the first year of the loan. *In other words, the low interest rate Wells Fargo promotes is not an interest rate at all.* Wells Fargo's buydown program is nothing more than a reduced monthly payment program.

Wells Fargo frames the program this way because it knows consumers will be drawn in by its promise of a lower initial interest rate. And Wells Fargo knows that most borrowers will never even realize they are not receiving the disclosed lower initial interest rate because the misleading disclosures make it extraordinarily difficult to detect. Consumers who agree to the buydown agreements do not receive the benefit of the lower interest rate they were promised, leaving them with a higher balance than expected at the end of the initial period. They then continue to pay interest on that inflated balance for the life of the loan. In short, Plaintiff and the class pay more than they should and Wells Fargo profits more than it should.

Wells Fargo's misleading conduct violates New York General Business Law § 349 and

the disclosure requirements of the Truth in Lending Act, and breaches express and implied terms of Well Fargo's contracts with Plaintiff and the class. Plaintiff asserts his section 349 and breach of contract claims on behalf of a class of individuals who entered into buydown agreements with Wells Fargo in real estate transactions in New York and his TILA claim on behalf of a class of individuals throughout the country who entered into buydown agreements with Wells Fargo.

Wells Fargo argues that all of Plaintiff's claims must be dismissed because the terms of the buydown agreement and closing disclosure are not misleading and allow it to charge interest at a higher rate than disclosed. But a reasonable person would expect that a buydown agreement offering a lower initial interest rate would mean just that—she would pay *interest* at the lower rate for the initial period, not just that her total monthly payment would be reduced. Wells Fargo cites purportedly clarifying statements that are in fact ambiguous on their face and in the context of the loan documents as a whole. Nor is there merit to Wells Fargo's contention that the agreement cannot be misleading because there is no provision addressing amortization. It is axiomatic that a loan will be amortized at the disclosed interest rate. If lenders could offer one rate and then amortize at another, the interest rate would be rendered meaningless.

Plaintiff respectfully requests that the Court deny Wells Fargo's motion.

## STATEMENT OF FACTS

Wells Fargo is one of the nation's largest originators and servicers of residential mortgages, making hundreds of thousands of residential loans every year. ¶15.[1] Wells Fargo offers consumers a variety of temporary payment reduction products. ¶17. One of these products is an interest rate buydown agreement. ¶¶1, 17. The form buydown agreement that Wells Fargo uses attaches a payment schedule that discloses a "buydown rate" for an initial period that is

---

[1] "¶ ___" and Exs. A and B refer to the First Amended Class Action Complaint (ECF No. 17).

lower than the interest rate for the remainder of the loan. Ex. B at Ex. A. In Plaintiff's case, the

payment schedule discloses a rate of 2.875% and monthly payment of $597.45 for the first 12

months followed by a rate of 3.875% and monthly payment of $677.15 for the remaining 29

years of the loan. *Id*. Both rates, however, are listed as applying to the "1st Period." *Id.*

      Wells Fargo also uses a form closing disclosure. Ex. A. Plaintiff's closing disclosure lists

the interest rate as 2.875% and states that it "[a]djusts every year starting in year 2" and "[g]oes

as high as 3.875% in year 2." Ex. A at 1. It includes an Adjustable Interest Rate Table that lists

an "Initial Interest Rate" of 2.875%, with a "[f]irst change" of 1% in the "[b]eginning of the 13th

month," and a "Maximum Interest Rate" of 3.875%." Ex. A at 4. A reasonable consumer would

expect to pay interest at the lower rate for the initial period (2.875% for the first year) and at the

higher rate for the remainder of the loan (3.875% for the remaining 29 years). ¶2.

      Instead of using the 2.875 figure as an interest rate, Wells Fargo used it to set Plaintiff's

total monthly payment. Plaintiff's monthly payment of $597.45 corresponds with a monthly

payment for a 30-year mortgage at a 2.875% rate, but the proportionate shares of interest and

principal he paid (*i.e.* how the mortgage was amortized) were not consistent with a 2.875%

interest rate. Taking the first month of Plaintiff's 30-year loan of $144,000 as an example, a

2.875% interest rate would result in a $345 interest payment (2.875%/12 * 144,000) and $252

principal payment, for a monthly payment of $597. Instead, Wells Fargo amortized the loan at

the rate of 3.875%, charging Plaintiff $465 in interest (3.875%/12 * 144,000) and $212 in

principal for a monthly total of $677.[2] Wells Fargo made up the difference by paying a portion of

---

[2] Calculated using Wells Fargo's amortization calculator:
https://mortgagecalculators.wf.com/response/content/clients/lf-wellsfargo/
home.html?toolid=home16&src=lfp_amort. (These numbers are rounded to the nearest dollar.
The actual monthly payments are $597.45 and 677.15).

Plaintiff's interest each month ($79.70), so that Plaintiff's total monthly payment was $597.45.

The result is that Plaintiff and other consumers do not receive the benefit of the lower interest rates they were promised and ultimately pay more interest and less principal each month than if Wells Fargo had used the lower rate to amortize the loan for the first year. Plaintiff's effective interest rate during the first year (the amount of interest he paid notwithstanding the portion paid by Wells Fargo) was 3.2103% and his principal at the end of the first year was consistent with a 3.875% interest rate and was $478.13 higher than it should have been. ¶ 45. This inflated balance will cost Plaintiff $1,471.00 in interest over the life of the loan. *Id.*

Wells Fargo's practice is further obscured by other misleading and inaccurate provisions in its buydown agreement and closing disclosure. ¶¶10-14; 43-44. Wells Fargo incorrectly characterized the funds used for the "rate buydown" in its buydown agreement and closing disclosure as being provided by Plaintiff, when in fact they were provided by Wells Fargo. Ex. B at 2; Ex. A at 2-A.04; ¶11. Wells Fargo combined the buydown funds it applied towards the loan with other unrelated monies it called "lender credits" in the closing disclosure without explaining it was doing so. Ex. A at 2-J; ¶12. And Wells Fargo disclosed an APR, finance charge, and total payment amount in the closing disclosure that were significantly higher than Plaintiff's actual figures. Ex. A at 5; ¶43. Wells Fargo's practice of amortizing the loan at the higher interest rate in the first year is extremely difficult, if not impossible, for a non-accountant to detect, and these inaccuracies make its conduct even more inscrutable. ¶¶13-14.

## AUTHORITY AND ARGUMENT

**I.      Wells Fargo's motion to dismiss should be denied.**

**A.      Plaintiff states a claim for violation of GBL § 349.**

New York General Business Law § 349 "was intended to empower consumers; to even

the playing field in their disputes with better funded and superiorly situated fraudulent businesses." *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 774 (N.Y. App. Div. 1995). The statute "makes unlawful 'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting § 349(a)). Contrary to Wells Fargo's arguments, Plaintiff pleads facts to support all three elements of the claim: "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* (citation omitted).

### 1. Plaintiff alleges consumer-oriented conduct.

Consumer-oriented conduct is conduct that has a "broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marina Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995). "Courts construe the consumer-oriented requirement liberally." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015). A defendant's conduct may be consumer oriented even if it is not repeated. *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) ("[S]o long as conduct was aimed at the public at large, it is immaterial that the defendant may not have 'committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers.'" (citation omitted)), *aff'd*, 626 F. App'x. 335 (2d Cir. 2015). A plaintiff must only show that the conduct "potentially affect[s] similarly situated customers." *Oswego*, 647 N.E.2d at 745. In contrast, "[p]rivate contract disputes, unique to the parties" do not fall within the ambit of the statute. *Id.* at 744.

Plaintiff pleads facts that show that Wells Fargo's conduct was consumer oriented. He alleges that Wells Fargo markets and offers buydown agreements to consumers throughout the country and uses boilerplate documents and disclosures, generated through highly automated

procedures, to memorialize the agreements. ¶¶17, 52-55, 73. He alleges that Wells Fargo's practices are standardized and that the language and form of the documents and disclosures, as well as the method for calculating interest rates, do not vary. ¶¶1-2, 7-9, 54.

Wells Fargo does not dispute these facts. Nor could it. Plaintiff's allegations are supported by the documents he attached to his complaint, as both bear the name of Wolters Kluwer Financial Services, a company that provides consumer and mortgage lending forms "used by more than 15,000 financial institutions, ranging from credit unions and finance companies to some of the largest banks in the nation"[3] and designed "to help lenders meet regulatory requirements at both the state and federal level."[4] They are literally form documents. Plaintiff also alleges that Wells Fargo is one of the largest originators and servicers of residential mortgages and makes hundreds of thousands of residential loans annually. ¶¶15-17, 55, 73.[5]

Courts routinely find that a defendant's conduct involving standardized agreements or policies is consumer oriented, including financial institutions that use standardized policies. *See Oswego*, 647 N.E. 2d at 745 (finding consumer-oriented conduct where "[t]he record indicates that defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts"); *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 173-74 (E.D.N.Y. 2013) (finding consumer-oriented conduct where the "crux" of the claim was that the defendants' debt-collection practices "were a normal part of defendants' business, which

---

[3] Wolters Kluwer Consumer Lending Compliance Documents, http://www.wolterskluwerfs.com/lending-origination/solutions/compliance-documents-consumer-lending.aspx.

[4] Wolters Kluwer Mortgage Compliance Documents, http://www.wolterskluwerfs.com/lending-origination/solutions/compliance-documents-mortgage.aspx.

[5] Contrary to Wells Fargo's assertion, Plaintiff's allegation of a nationwide practice supports an inference of an impact on the general public in New York.

involved hundreds of thousands of dollars in consumer debt"); *M & T Mortg. Corp. v. White,* 736 F. Supp. 2d 538, 571 (E.D.N.Y. 2010) (finding consumer-oriented conduct where a mortgage company offered a standard lending policy to prospective borrowers); *Interested Underwriters at Lloyd's of London v. Church Loans & Invs. Trust*, 432 F. Supp. 2d 330, 334 (S.D.N.Y. 2006) ("Decisions from New York Appellate Division courts have emphasized that standard agreements and policies are significant in showing that challenged actions are consumer-oriented."); *see also Casper Sleep, Inc. v. Mitchum,* 204 F. Supp. 3d 632, 644 (S.D.N.Y. 2016) (consumer oriented conduct is a "way of doing business" as opposed to a one-off transaction); *Nick's Garage*, 875 F.3d at 124-25 (evidence that insurer misled consumers by paying repair rates that were lower than the prevailing competitive labor rates it said it would pay in its policy satisfied the requirement of consumer-oriented conduct). Because section 349 is intended to "even the playing field" for consumers, courts are more likely to find consumer-oriented conduct, where, as here, the "relative bargaining power and sophistication of the parties" favors the defendant. *Interested Underwriters*, 432 F. Supp. 2d at 332-33.

Courts have repeatedly found broad consumer impact to be adequately pled in similar circumstances. In *Kapsis v. American Home Mortgage Servicing Inc.*, the court found the plaintiff stated a claim for violation of section 349 where he alleged deceptive conduct aimed at a class, that the defendant was engaged in consumer-oriented conduct as a servicer of residential mortgage loans, and that the deceptive acts and practices affect consumers at large because the class was composed of tens of thousands of individuals. 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013). Similarly, in *Harte v. Ocwen*, the plaintiff alleged consumer-oriented conduct even though she "detail[ed] only her particular experience" because she alleged that Ocwen routinely engaged in the deceptive conduct. No. 13-CV-5410 MKB, 2014 WL 4677120, at *17 (E.D.N.Y.

Sept. 19, 2014); *see also Interested Underwriters*, 432 F. Supp. 2d at 332 (denying motion to dismiss where the plaintiff alleged the defendant used a "standard, garden-variety fire insurance policy"); *Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 (DLI) (JO), 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (allegation that the letter plaintiff received "was a form letter, which was likely mailed to thousands of consumers" was sufficient); *Pandit v. Saxon Mortg. Servs., Inc.*, No. 11-CV-3935(JS) (GRB), 2012 WL 4174888, at *6 (E.D.N.Y. Sept. 17, 2012) (allegations that the defendant routinely engaged in steps designed to string along loan modification applicants and routinely violated its own loan modification plans were sufficient).

Wells Fargo baldly asserts that this case involves "a discrete, individualized contract dispute" and claims that Plaintiff's allegations constitute mere "threadbare recitals." But Plaintiff's claim does not turn on the kind of individualized conduct that was at issue in the cases Wells Fargo cites. For example, in *Kwon v. Satander Consumer U.S.A.*, the plaintiff alleged he did not receive a contract at the time of sale and when he later received a copy he was charged for a warranty claim he had explicitly declined. No. 15-cv-3342, 2016 WL 6518578, at *1 (E.D.N.Y. Oct. 6, 2016). This Court held the allegations were "uniquely specific" to the plaintiff's experience and the plaintiff did not allege a "broader impact on consumers at large." *Id.* at *6 (citation omitted). Wells Fargo does not claim it did anything unique with regard to Plaintiff and his contract and instead asserts that the form contracts authorize its conduct. Two of Wells Fargo's cases involved disputes over large one-off contracts negotiated by sophisticated entities. *See Teller*, 630 N.Y.S.2d at 773 (dispute between a contractor and homeowner over the costs of home improvements); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 321 (N.Y. 1995) (dispute between NYU and insurance company over a policy "tailored to meet [NYU's] wishes and requirements"). A third involved a dispute between an insurer and its insured over

"policy coverage that is unique to the parties." *Korn v. First UNUM Life Ins. Co.*, 717 N.Y.S.2d 606, 606 (N.Y. 2000). None involved boilerplate, standardized documents like this case.

Wells Fargo also relies on distinguishable cases in which the plaintiff included few or no factual allegations regarding impact on the general public. *See Frederick v. Capital One Bank (USA), N.A.,* 14-CV-5460 AJN, 2015 WL 5521769, at *1, 11 (S.D.N.Y. Sept. 17, 2015) (plaintiff claimed the defendant reported false information to credit agencies and threatened him with injury to his credit score because of his race and alleged others were similarly injured with no supporting facts); *Miller v. HSBC Bank U.S.A., N.A.*, No.13 Civ. 7500, 2015 WL 585589, at *1, 4, 8 (S.D.N.Y. Feb. 11, 2015) (plaintiff alleged a "fraudulent loan modification program" but not the terms of her mortgage contract and "only conclusory allegations of impact on consumers at large"); *MacGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) (bald allegation of "a national policy to terminate unprofitable disability insurance payments" was insufficient where the plaintiff alleged the defendant breached its obligation to pay insurance benefits and contacted his doctors); *Harary v. Allstate Ins. Co.*, 983 F. Supp. 95, 99 (E.D.N.Y. 1997) (conclusory allegation that practices injured the public at large was insufficient where the plaintiff claimed his insurer harassed him and denied his claim based on fraud without evidence).

The cases Wells Fargo cites in which plaintiffs claimed to satisfy the consumer-oriented requirement because of their class allegations are also inapposite. Plaintiff does not rely on his class allegations, but rather on Wells Fargo's uniform conduct and standardized documents. Wells Fargo's cases also turned on unique circumstances not present here. *See Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 295, 310 (E.D.N.Y. 2017) (plaintiff did "not allege any direct contact between defendant and plaintiff or the general public" where he claimed the defendant processed unlawful transactions on behalf of payday lenders making loans over the

internet); *Axiom Inv. Advisors, LLC v. Deutsche Bank, AG*, 234 F. Supp. 3d 526, 536-37 (S.D.N.Y. 2017) (electronic trading, like securities transactions, is categorically not consumer-oriented conduct); *Bristol Village, Inc. v. La.-Pac. Corp.*, 170 F. Supp. 3d 488, 549-50 (W.D.N.Y. 2016) (granting summary judgment where the plaintiff's warranty claim was based on individual conduct such as his failure to comply with installation instructions).

### 2.    Plaintiff alleges misleading conduct.

For purposes of a section 349 claim, "misleading" is defined objectively and a practice satisfies the requirement if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples*, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted). Misleading conduct includes both misrepresentations and omissions. *Nick's Garage*, 875 F.3d at 124. Because the question of whether conduct is misleading "requires a reasonableness analysis," courts find that the issue "cannot be resolved on a motion to dismiss." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (denying motion to dismiss because the question of whether product labels were misleading was a question of fact and collecting cases); *see also Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 (PAC), 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) (same); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same).

Plaintiff pleads a practice that is likely to mislead a reasonable consumer. Plaintiff alleges that Wells Fargo promises a lower interest rate for an initial period in its form buydown agreements and closing disclosure and instead uses a different, higher rate to amortize the loans during that period. Wells Fargo then pays a portion of the monthly interest so the total monthly payment is reduced, but consumers pay the same amount of principal as if there were no agreement at all. As a result, consumers do not actually get the disclosed lower interest rate for the initial period. Wells Fargo does not dispute this conclusion and admits that all it did was

"temporarily lower Plaintiff's monthly mortgage payments for a one-year period." Motion at 1.

This practice is misleading. *See*, *e.g.*, *Orlander*, 802 F.3d at 301 (finding the plaintiff alleged materially misleading conduct where the terms of the contract could lead a reasonable consumer to expect he or she would receive more than was actually provided). Reasonable consumers would expect that agreeing to a lower initial rate would mean paying interest at that rate and not just that their monthly payment would be lower while the interest on their balance continued to climb. As a result of the various inconsistent and inaccurate disclosures regarding the source of the buydown funds and other figures in the buydown agreement and closing disclosure, *see* ¶¶10-14, 43, Wells Fargo's conduct is even more misleading and difficult to detect. ¶¶13-14, 44.

Wells Fargo is correct that the buydown agreement and closing disclosure do not address amortization. That omission is in large part what makes Wells Fargo's practice misleading, particularly when combined with the disclosure of the lower interest rate for the initial period. If Wells Fargo simply intended to pay off a portion of Plaintiff's monthly interest payment, it could have disclosed that fact rather than promising a lower initial interest rate that it did not intend to deliver. *See Oswego*, 647 N.E.2d at 745 (section 349 does not require businesses to "ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation," but "[t]he scenario is quite different … where the business alone possesses material information that is relevant to the consumer and fails to provide this information"). Wells Fargo's argument that "nothing in Plaintiff's loan documents … purported to override his loan terms," Motion at 9, ignores that the point of the buydown agreement was to give Plaintiff a different (lower) rate than under his original loan terms.

The language that Wells Fargo relies on—"each monthly payment from the buydown deposit will pay only a part of the interest portion of the total mortgage payment, and Borrowers

will be required to pay the balance of each mortgage payment as it comes due"—does not inform consumers that Wells Fargo is not actually providing a lower interest rate in the first year of the loan, but is instead merely allowing for a lower payment. Ex. B at 1. This provision is even more muddled because it states that Plaintiff, not Wells Fargo, contributed the buydown funds. *Id.* The provision's reference to Exhibit A, the buydown payment schedule, does not clarify matters. The buydown payment schedule is confusing and inconsistent, stating:

Loan Amount: $144,000.00

| | Buydown Rate | P & I | Difference |
|---|---|---|---|
| 1st Period | 2.875% | $597.45 | $79.70 X 12 = $956.40 |
| | | | Total of Buydown Funds = $956.40 |

The note will bear an interest rate of 3.875% and will have a principal and interest payment schedule as follows:

| | |
|---|---|
| 1st Period P & I | $677.15 |

This is the schedule for principal and interest only. Additional amounts will be included in the payment to cover the cost of taxes, insurance and mortgage insurance. Please note that if you have not yet locked in an interest rate, all rates and principal and interest (P & I) payments as listed above may change 3 days prior to closing.

While the document states on the one hand that the "1st Period … Buydown Rate" is 2.875% and that a $597.45 payment constitutes "P&I" ("principal and interest"), it simultaneously states that the "1st Period P&I" is $677.15 and the "note will bear an interest rate of 3.875%." *Id.*

The closing disclosure Plaintiff and class members received with their buydown agreements states that the interest rate will be 2.875% for the first year and 3.875% for the remainder of the loan. Ex. A. Viewed together, these disclosures do not provide a reasonable consumer with fair notice that the initial interest rate is not actually an interest rate and that their balances will be amortized at the higher rate, resulting in balances that correspond to the higher interest rate even as they make payments that correspond to the lower rate. This is misleading.

The cases Wells Fargo cites do not support its argument. In *Owens v. Aspen Funding LLC*, the plaintiff alleged that she was defrauded into taking out adjustable-rate mortgage loans that she could not afford and that the mortgage documents were misleading because they made it

appear that the initial 2% interest rate applied for a year and hid the fact that the loan was negatively amortizing. No. 08-cv-6588, 2011 WL 4024820, at *6 (W.D.N.Y. Sept. 9, 2011). The court found that the loan documents, "although complicated, accurately reflect the terms of the adjustable-rate arrangements" because they explicitly stated that the initial interest rate of 2% "was subject to change on a monthly basis" and might change as of the date of her second payment and "explain[ed] that the loan will be negatively-amortizing if the borrower chooses to make limited payments, as Plaintiff did." *Id.* at *2, 12. By contrast, Wells Fargo's form buydown agreement and closing disclosure do not explicitly state that the loan will be amortized at the higher interest rate for the full term of the loan. In *Mendez v. Bank of America Home Loan Services, LP*, the plaintiff alleged that the default related servicing fees his lender charged were deceptive and misleading but his mortgage contract put no limit on the fees and he relied on fees that had been posted on the lender's website after he entered into his contract. 840 F. Supp. 2d 639, 657-59 (E.D.N.Y. 2012). And in *Stephens v. Capital One Financial Corp.*, the court found that, to the extent the plaintiff's allegation that the defendant banks had wrongfully "restrained" funds from his account could be read to assert a claim under GBL § 349, he identified no deceptive practice. No. 12-cv-00193, 2012 WL 2458173, at *1, 5 (E.D.N.Y. June 22, 2012).

### 3.  Plaintiff alleges an actionable injury.

Wells Fargo's contention that Plaintiff must allege an injury independent of his contract relies on *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). The Second Circuit has confirmed that *Spagnola* "do[es] not establish such a requirement." *Nick's Garage*, 875 F.3d at 125. Instead, *Spagnola* "found no GBL injury 'where the plaintiffs alleged damages in the amount of the purchase price of their contracts, but failed to allege that defendants had denied

them the services for which they contracted.'" *Id.* (quoting *Orlander*, 802 F.3d at 302).[6] In

*Orlander*, the Second Circuit held that the plaintiff pled an injury stemming from a misleading

practice by alleging that he would not have purchased services from the defendant had he known

the defendant intended to decline to provide him services in the first year of his contract. 802

F.3d at 301.[7] Similarly, in *In re Anthem, Inc. Data Breach Litigation*, the court found that the

plaintiffs pled an injury under GBL § 349 by alleging that they lost the benefit of their bargain

because they overpaid the defendant as a result of the allegedly deceptive practice. 162 F. Supp.

3d 953, 995-96 (N.D. Cal. 2016); *see also Donnenfeld v. Petro, Inc.*, No. 17-CV-2310 (JFB)

(SIL), 2018 WL 4356727, at *11 (E.D.N.Y. Sept. 12, 2018) ("Based on this most-recent

guidance from the Second Circuit, and given the allegations that [the plaintiff] did not receive the

full value of his purchase and repeatedly overpaid for home heating oil based on alleged

deceptive practices, the Court declines to dismiss the GBL claims for failure to allege a monetary

loss independent of the loss caused by [the defendant's] alleged breach of contract."). As in

*Orlander*, *Anthem*, and *Donnenfeld*, Plaintiff alleges that he did not receive the benefit of his

bargain in entering the buydown agreement—a lower interest rate for the first year of his

mortgage—and will overpay as a result. ¶¶1-3, 5-6, 71. Because Plaintiff has identified deceptive

statements and a resulting pecuniary harm, he has met section 349's injury requirement.

### B. Plaintiff states a claim for breach of contract.

Plaintiff alleges that Wells Fargo breached the buydown agreement by promising a lower

interest rate for the first year of his loan but not actually delivering that interest rate. Although

---

[6] The other case Wells Fargo cites merely referenced *Spagnola* without discussion. *See DiGangi v. Gov't Emp'rs Ins. Co*, No. 13-cv-5627, 2014 WL 3644004, at *7 (E.D.N.Y. July 22, 2014).

[7] Of course, reliance is not required under section 349. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941–42 (N.Y. 2012) ("Justifiable reliance by the plaintiff is not an element of the statutory claim.").

Wells Fargo agreed that the interest rate would be reduced during the first year (to 2.875%), the lower interest rate was illusory because Wells Fargo did not amortize the loan at that rate. ¶¶78-79. Wells Fargo contends that Plaintiff's allegations contradict the "clear language" of the agreement. But there is no "clear language" in the agreement disclosing Wells Fargo's practice of amortizing the loan at the higher interest rate of 3.875% for the full term of the loan, including the first year. What the buydown agreement does state is that the loan will be subject to a 2.875% buydown rate for the first period. As Wells Fargo acknowledges, the buydown agreement does not state how the loan will be amortized. Motion at 5. And while the buydown agreement states that it shall not be construed to contradict the note or mortgage, Ex. B at ¶ 11, the entire purpose of the buydown agreement is to modify the parties' obligations under the note and mortgage.

A court may only dismiss a claim for breach of contract if the contract's terms are unambiguous. *Orlander*, 802 F.3d at 295 ("[I]f a contract is ambiguous as applied to [the facts that furnish the basis of the suit], a court has insufficient data to dismiss a complaint for failure to state a claim." (citation omitted) (alterations in original)). "A contract term is unambiguous if it has 'a definite and precise meaning unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* (citation omitted). Ambiguities in a contract are construed against the drafter. *Village of Ilion v. County of Herkimer*, 18 N.E.3d 359, 363 (N.Y. 2014).

In *Orlander*, the court found a contract was ambiguous "in several respects relevant to Plaintiff's claim" because some of the terms "could certainly be clearer" and were subject to multiple reasonable interpretations. 802 F.3d at 296-97; *see also Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) ("An ambiguous term is one about which reasonable minds could differ."). The same is true in this case. Plaintiff's interpretation of the

buydown agreement and closing disclosure is reasonable and the purportedly contradictory provisions Wells Fargo points to are ambiguous and internally inconsistent. The provision stating that "[e]ach monthly payment from the buydown deposit will pay only a part of the interest portion of the total mortgage payment" (Ex. B at ¶1) can be read to merely put the borrower on notice that Wells Fargo will pay a portion of the interest and the borrower will be responsible for the remainder of the interest—and incorrectly says the buydown funds were contributed by Plaintiff. To the extent Wells Fargo argues that this provision made it clear that Plaintiff's loan would be amortized at the 3.875% rate and the amount of principal owed would not be affected by the agreement, it fails to explain why the 2.875% interest rate even appears in the buydown agreement and closing disclosure. *See Orlander*, 802 F.3d at 295 ("'words and phrases … should be given their plain meaning' and a 'contract should be construed so as to give full meaning and effect to all of its provisions'" (alterations in original) (citation omitted)).

The statement that Plaintiff's note "will bear an interest rate of 3.875%" and a "1st Period P&I" of $677.15 follows the conflicting statement that the "1st Period Buydown Rate" is 2.875% and the "1st Period P&I" is $597.45. Ex. B at Ex. A. The closing disclosure supports Plaintiff's interpretation of the buydown agreement because it explicitly describes the 2.875% rate as an interest rate for the first year. *See Bank of New York Trust Co. v. Franklin Advisers, Inc.*, 726 F.3d 269, 276 (2d Cir. 2013) ("[I]f contract terms are ambiguous, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'" (citation omitted)). These ambiguous and contradictory terms must be construed against Wells Fargo and preclude dismissal of Plaintiff's breach of contract claim.

Plaintiff also states a claim for violation of the implied covenant of good faith and fair dealing in the alternative. While Plaintiff's position is that Wells Fargo breached an express term

of the agreement by failing to deliver on the promised initial interest rate, Wells Fargo argues that there was no breach because there is not a provision that addresses amortization. The covenant applies in exactly this circumstance because the "implied promise is so interwoven into the contract 'as to be necessary for effectuation of the purposes of the contract.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006); *see also 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500-01 (N.Y. 2002) (the duties of good faith and fair dealing "encompass 'any promises which a reasonable person in the position of the promise would be justified in understanding were included'"(citation omitted)). The purposes of the buydown agreement cannot be effectuated without amortizing the loan and the question in this case is what interest rate must be used to amortize the loan for the initial period. By characterizing the benefit of the buydown agreement as a lower initial rate that would modify the terms of the loan, and by explicitly referring to the 2.875% figure as an interest rate, Wells Fargo impliedly promised that the contract would be amortized at that rate. Indeed, "[i]t cannot be that anytime a contract is silent on a specific right, implying a term limiting that hypothetical right is inconsistent with the 'express terms of the contract.'" *Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018) ("where, as here, there is a dispute over the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both [a breach of contract claim and breach of the implied covenant] in the alternative").

### C.    Plaintiff states a claim for violation of the Truth in Lending Act.

The Truth in Lending Act requires that residential real estate loan disclosures like Plaintiff's buydown agreement and closing disclosure "state … examples of adjustments to the regular required payment on the extension of credit based on the change in the interest rates specified by the contract for such extension of credit." 15 U.S.C. § 1638(b)(2)(C)(ii). The statute

requires lenders to disclose "an example that reflects the maximum payment amount of the regular required payments on the extension of credit, *based on the maximum interest rate allowed under the contract*." *Id.* (emphasis added).

Plaintiff alleges that Wells Fargo violated this provision of TILA because the disclosures set forth one interest rate for the initial period (2.875%) without disclosing that it was not actually an interest rate and that Plaintiff would effectively be charged a higher rate due to Wells Fargo's method of amortization. ¶¶83-86. Wells Fargo argues that this claim fails because Plaintiff's other claims fail. As discussed above, Wells Fargo is wrong. Wells Fargo also argues that it complied with section 1638(b)(2)(C)(ii) because it disclosed the maximum payment amounts for the first year and subsequent years. But Wells Fargo did not disclose that the first-year payments were not based on the lower rate disclosed in the buydown agreement that applied to those payments. Finally, Plaintiff is not required to allege that Wells Fargo violated any rules promulgated under TILA and Wells Fargo cites no authority to support its argument that he does.

## II.     Wells Fargo's motion to strike should be denied.

Motions to strike are strongly disfavored and "[a] motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (citation omitted). "'[D]istrict courts in this Circuit have frequently found that a determination of whether Rule 23 requirements are met is more properly deferred to the class certification stage,' when the court has before it a more complete factual record from which to make its determination." *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38,

53 (E.D.N.Y. 2017) (citation omitted); *see also Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking, then, motions of this kind are deemed procedurally premature."). Because courts in this circuit "are loath" to terminate class allegations before discovery, a defendant's burden on a motion to strike is very high. *Duarte v. Tri-State Phys. Med. & Rehab., P.C.*, No. 11 Civ. 3765 (NRB), 2012 WL 2847741, at *6 (S.D.N.Y. July 11, 2012). A defendant can only prevail by "demonstrat[ing] from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery." *Greene*, 262 F. Supp. 3d at 52 (citation omitted). Wells Fargo has not satisfied this heavy burden.

### A. Plaintiff's proposed classes are not fail-safe classes.

A "fail-safe class" is one whose definition "precludes membership unless the liability of the defendant is established." *Spread Ent., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014) (citation omitted). "In other words, '[i]n a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment.'" *Id.* (alteration in original) (citation omitted). For example, in *Spread Enterprises* the plaintiffs defined subclasses to include persons who "were charged excessive fees." *Id.* These definitions improperly "turn[ed] on whether the fees that the Merchants were being charged by the Defendants were excessive rather than on whether the Merchants were simply being charged a particular fee regardless of whether it was excessive." *Id.* Rather than being "neutral," the definitions "already presuppose[d] that the subject fees were excessive, despite the fact that the Defendants dispute this allegation." *Id.* at 69-70. Similarly, in *Mazzei v. Money Store*, the class was defined as borrowers who were charged fees "that were not permitted" by the loan agreements, requiring a finding on the permissibility of the fees before class membership could

be determined. 288 F.R.D. 45, 55 (S.D.N.Y. 2012).

Plaintiff's class definitions are based on objective criteria rather than disputed allegations as in *Spread Enterprises* and *Mazzei*. The definitions do not turn on whether or not the mortgage payments "were not permitted" as Wells Fargo contends. Even if they could be characterized as "fail safe," the Court could simply revise the definitions. *See Spread Ent.*, 298 F.R.D. at 70.

**B.    Wells Fargo has not shown it will be impossible to demonstrate numerosity.**

Instead of showing that it will be impossible to demonstrate numerosity, Wells Fargo merely argues that Plaintiff's allegations are insufficient. But Plaintiff has alleged several facts from which the Court can reasonably infer that there are at least 40 members in each class and presume numerosity. *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016). Plaintiff alleges that the loan documents and relevant disclosures are boilerplate documents, Wells Fargo's residential loan program is one of the largest in the nation, Wells Fargo makes hundreds of thousands of residential loans every year and regularly uses similar buydown products, Wells Fargo uses automated procedures to generate disclosures and calculate interest, the buydown program is offered to the public, and class members' identities can be determined from Wells Fargo's records. ¶¶52-57. No more is required. *See Duarte*, 2012 WL 2847741, at *9 (in ruling on motion to strike, finding it "suffices for present purposes that there are at least several factors suggesting that numerosity could be established"). Even in the context of a motion for class certification, courts may "make common sense assumptions without the need for precise quantification of the class." *Diaz v. Residential Credit Sol., Inc.*, 297 F.R.D. 42, 49 (E.D.N.Y. 2014) (citation omitted) (presuming the defendant sent similar form letters to other debtors).

In *Williams v. CitiMortgage, Inc.*, by contrast, the plaintiffs merely alleged that the class members were so numerous that joinder was impracticable, with no additional facts. No. 13-cv-

354, 2014 WL 1406601, at *2-3 (W.D. Okla. Apr. 10, 2014). Wells Fargo also relies on cases in

which the plaintiffs relied on "bald assertions" and conclusory statements when moving for class

certification, which has different evidentiary standards. *See Pecere v. Empire Blue Cross & Blue

Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2000); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681

(S.D. Cal. 1999); *Lloyd v. Indus. Bio-Test Labs., Inc.*, 454 F. Supp. 807, 812 (S.D.N.Y. 1978).

**C.      Wells Fargo has not shown it will be impossible to demonstrate commonality.**

Wells Fargo also fails to meet its burden of showing impossibility in challenging

commonality, arguing only that the common questions Plaintiff alleges would not satisfy the

standard the Supreme Court articulated for a motion for class certification in *Wal-Mart Stores,

Inc. v. Dukes*, 564 U.S. 338 (2011). A court addressing a similar argument found the plaintiffs'

allegation of company-wide practices were sufficient to conclude that the defendant "has failed

to show that, with the benefit of discovery, Plaintiffs would be unable to allege facts that take

this case out of the *Dukes* ruling." *Chen-Oster*, 877 F. Supp. 2d at 118-19. Plaintiff alleges

common practices relating to the buydown agreements at issue, including the disclosures Wells

Fargo makes in the loan documents and how it amortizes the loans. ¶¶3-6, 8-12. Whether Wells

Fargo has these policies and practices and whether they are misleading, violate TILA, or

constitute breach of contract are common questions that will "generate common *answers* apt to

drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted); *see also Kurtz v.

Kimberly-Clark Corp.*, 321 F.R.D. 482, 530 (E.D.N.Y. 2017) (collecting cases holding that the

question of whether conduct was deceptive or misleading under General Business Law § 349

satisfied commonality). The case Wells Fargo cites addressing a motion to certify wage and hour

claims is procedurally and factually distinguishable. *See Briceno v. USI Servs. Grp., Inc.*, No. 09-

cv-4252, 2012 WL 4511626, at *6-7 & n.5 (E.D.N.Y. Sept. 28, 2012) (plaintiffs' claims turned

on "two separate policies … affecting two distinct groups of class members").

**D.      Wells Fargo has not shown that Plaintiff is atypical or inadequate.**

A plaintiff is typical of the proposed class if his claims arise "from the same course of events, and each class member makes similar arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citation omitted) A plaintiff is an adequate representative of a class when he "will fairly and adequately protect the interests of the class." *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). Plaintiff alleges that he "was subject to the same pattern of misbehavior as other members of the classes," his claims are "based on the same facts and legal theories as the claims of all other class members," and "[h]is interests do not conflict with" other class members' interests. ¶¶60-62. No more is required. *See, e.g., Chenensky v. New York Life Ins. Co.*, No. 07 Civ. 11504 (WHP), 2011 WL 1795305, at *4 (S.D.N.Y. Apr. 27, 2011) ("[G]iven that Chenensky has not yet sought to certify any particular class, any inquiry into whether he is in fact an adequate representative for that class is premature.").

Wells Fargo contends its liability will turn on the agreements with each class member but Plaintiff alleges that Wells Fargo's agreements and practices are standardized. ¶¶53-54. Wells Fargo's argument that Plaintiff cannot represent class members who assert claims based on a promise about amortization speculates that class members will make that claim. And Wells Fargo relies on a case describing the different standard for a certification motion. *See Roach v. T.L. Cannon Corp.*, No. 10-cv-591, 2015 WL 10818750, at *3 (N.D.N.Y. Sept. 4, 2015).

**E.      Wells Fargo has not shown it will be impossible to satisfy Rule 23(b)(3).**

Courts are particularly reluctant to strike class allegations when a defendant argues that individualized issues will predominate because it is rarely possible to determine whether individualized proof will be necessary before discovery. *See, e.g., Med. Soc'y of N.Y. v.*

*UnitedHealth Group Inc.*, No. 16-CV-5265 (JPO), 2018 WL 1773142, at *2 (S.D.N.Y. Apr. 12, 2018) ("Whether questions common to the class predominate over individualized issues is precisely the sort of determination that the Court would make at the class certification stage."); *Duarte*, 2012 WL 2847741, at *10 ("A more comprehensive record is needed to assess whether issues common to the class do indeed predominate over those specific to individual members.").

Wells Fargo argues that the different types of buydown agreements that financial institutions may use are subject to different guidance by the Bureau of Consumer Financial Protection, but this case is about buydown agreements that are substantially similar to the one Plaintiff entered into with Wells Fargo. Wells Fargo's argument that a detailed analysis will be required of the terms of class members' mortgages, buydown agreements, closing disclosures, and payment history contradicts Plaintiff's allegation that the terms and disclosures are materially the same and is based on pure speculation. The Second Circuit reversed a district courts' grant of a motion to deny certification (brought after substantial discovery) where the district court based its conclusions "on assumptions of fact rather than findings of fact." *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 21-22 (2d Cir. 2003). As in *Parker*, it "remains unknown what class" Plaintiff will ultimately seek to certify, *id.*, and after discovery into Wells Fargo's practices Plaintiff may choose to narrow the classes if it turns out that there are material differences in the disclosures and buydown agreements. *See Chenensky*, 2011 WL 1795305, at *4 (discovery may "inform the drawing of class boundaries that obviate the need for individual proof" and "[i]t is simply too soon to tell, and this Court will not speculate as to boundaries of the class that Chenensky may ultimately seek to certify").

Moreover, the existence of some individualized issues is not a barrier to certification. "Rule 23(b)(3) … does *not* require a plaintiff seeking class certification to prove that each

'elemen[t] of [her] claim [is] susceptible to classwide proof.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 469 (2013) (alterations in original) (citation omitted). The "predominance requirement is meant to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation, but it scarcely demands commonality as to all questions." *Comcast Corp. v. Behrend*, 569 U.S. 27, 39-40 (2013) (citation omitted). Thus, class certification is appropriate if some individualized questions remain after resolution of the common issues. Courts certify classes even when review of class members' documents may be necessary. *See, e.g., Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 WL 3187410, at *10 (N.D. Cal. June 21, 2013) (certifying class that required a review of records to exclude categories of borrowers even though it "will entail some effort on the part of counsel for both parties"); *Perez v. First Am. Title Ins. Co.*, No. 08-cv-1184, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("while this issue may involve a file-by-file review, it will not require a file-by-file trial").

Contrary to Wells Fargo's assertions, courts routinely certify the claims Plaintiff asserts. *See, e.g., Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87-89 (2d Cir. 2015) (affirming certification of § 349 claim because whether the defendants used deceptive acts and practices to collect debt was a predominating common question); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124-26 (2d Cir. 2013) (affirming certification of breach of contract claims where the relevant terms of contracts were materially similar); *Kelen v. World Fin. Network Nat'l Bank*, 295 F.R.D. 87, 91, 95 (S.D.N.Y. 2013) ("TILA specifically contemplates and allows class actions to address creditors' failures to comply with the statute and applicable regulations"). In the out-of-circuit cases Wells Fargo cites the courts found that class members' contracts were materially different, a determination this Court cannot yet make. *See Moore v. Apple Inc.,* No. 14-cv-02269-LHK, 2015 WL 7351464, at *6 (N.D. Cal. Nov. 20, 2015) (material variations in

wireless service agreements); *Glover v. Udren*, No. 08-cv-990, 2013 WL 6237990, at \*18-19 (W.D. Pa. Dec. 3, 2013) (individually negotiated loan modification agreements with materially different provisions); *see also Mata v. CitiMortgage, Inc.*, No. 10-cv-9167, 2012 WL 7985175, at \*2 (C.D. Cal. July 20, 2012) (claim turned on whether notes were properly endorsed, requiring inspection of each note). Wells Fargo's other cases involved varying oral representations[8] or complicated causation issues.[9] Plaintiff's claims turn on written disclosures and the alleged damages could only have been caused by Wells Fargo.

**F.      Wells Fargo has not shown it will be impossible to satisfy 23(b)(1) or (b)(2).**

Plaintiff alleges the class may alternatively be certified under (b)(1) or (b)(2). ¶69. Wells Fargo argues that certification under (b)(1) or (b)(2) is improper because Plaintiff seeks primarily damages. It would be premature to strike these allegations until Plaintiff has conducted discovery and decided what remedy to seek. *See Grant v. N.Y. Times Co.*, No. 16-cv-03175 (PKC), 2017 WL 4119279, at \*8-9 (S.D.N.Y. Sept. 14, 2017); *see also Parker*, 331 F.3d at 21 ("[I]t is likely that at least minimal class discovery must be conducted in order to provide the court with the factual information necessary to decide whether or not to certify a Rule 23(b)(2) class.").

## CONCLUSION

Plaintiff requests that the Court deny Wells Fargo's motion in its entirety.

---

[8] *See Haynes v. Planet Automall, Inc.*, 276 F.R.D. 70 (E.D.N.Y. 2011) ("[p]urchases normally involve individual oral negotiations as to price, terms and incidentals, such as warranties, between purchasers of varying experience and skills"); *Carnegie v. H.R. Block, Inc.*, 703 N.Y.S.2d 27, 29 (N.Y. App. Div. 2000) (individualized oral representations inducing loans).

[9] *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 88-89 (S.D.N.Y. 2010) (claim that McDonald's advertising misled consumers into believe its food required inquiry into whether various medical conditions were caused by the food); *Tegnazian v. Consol. Edison, Inc.*, 730 N.Y.S.2d 183, 186-87 (N.Y. Sup. Ct. 2000) (individualized issues precluding certification of claim against electric company following blackout included standing of non-customers and causation of damages ranging from loss of cab fares, food spoilage, and extra security costs).

RESPECTFULLY SUBMITTED AND DATED this 19th day of October, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email:  bterrell@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Daniel A. Schlanger
Email: dschlanger@consumerprotection.net
SCHLANGER LAW GROUP LLP
9 East 40th Street, Suite 1300
New York, New York 10016
Telephone: (212) 500-6114
Facsimile: (212) 612-7996

Brian K. Herrington, *Admitted Pro Hac Vice*
Email: bherrington@consumerprotection.net
SCHLANGER LAW GROUP LLP
602 Steed Road, Suite 100
Ridgeland, Mississippi 39157
Telephone: (601) 208-0013
Facsimile: (212) 612-7996

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on October 19, 2018, I electronically transmitted the

foregoing to the following:

> Jennifer M. Rosa
> Email:  jrosa@mayerbrown.com
> Robert W. Hamburg
> Email: rhamburg@mayerbrown.com
> MAYER BROWN LLP
> 1221 Avenue of the Americas
> New York, New York 10020
> Telephone: (212) 506-2500
> Facsimile: (212) 262-1910
>
> Debra Lee Bogo-Ernst, *Admitted Pro Hac Vice*
> Email: dernst@mayerbrown.com
> Lucia Nale, *Admitted Pro Hac Vice*
> Email: lnale@mayerbrown.com
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, Illinois 60606
> Telephone: (312) 782-0600
> Facsimile: (312) 701-7711
>
> *Attorneys for Defendant*

DATED this 19th day of October, 2018.

> TERRELL MARSHALL LAW GROUP PLLC
>
>
> By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
>       Beth E. Terrell, *Admitted Pro Hac Vice*
>       Email:  bterrell@terrellmarshall.com
>       936 North 34th Street, Suite 300
>       Seattle, Washington 98103-8869
>       Telephone: (206) 816-6603
>       Facsimile: (206) 319-5450
>
> *Attorneys for Plaintiff*