FILED
CLERK
2:20 pm, Aug 20, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ALEJANDRO CARRILLO, on behalf of himself and all others similarly situated,

                          Plaintiff,

      -against-

WELLS FARGO BANK, N.A.,

                          Defendant.
------------------------------------------------------------------------X

**ORDER**
18-CV-3095 (SJF)(SIL)

FEUERSTEIN, District Judge:

Pending before the Court are the objections of defendant Wells Fargo Bank, N.A. ("defendant" or "Wells Fargo") to so much of the Report and Recommendation of the Honorable Steven I. Locke, United States Magistrate Judge, dated May 10, 2019 ("the Report"), as recommends denying the branches of its motion seeking to dismiss the claims of plaintiff Alejandro Carrillo ("plaintiff" or "Carrillo") against it in the first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a plausible claim for relief. For the reasons set forth below, defendant's objections are overruled and the Report is accepted in its entirety.

I.     Discussion

    A.     Standard of Review

Any party may serve and file written objections to a report and recommendation of a magistrate judge on a dispositive matter within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Any portion of such a report and recommendation to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. §

1

636(b)(1); Fed. R. Civ. P. 72(b)(3). The court, however, is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). To accept the report and recommendation of a magistrate judge to which no specific, timely objection has been made, the district judge need only be satisfied that there is no clear error apparent on the face of the record. See Fed. R. Civ. P. 72(b); *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (a court may review a report to which no timely objection has been interposed to determine whether the magistrate judge committed "plain error.")

However, general objections, or "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke *de novo* review." *Owusu v. New York State Ins.*, 655 F. Supp. 2d 308, 312-13 (S.D.N.Y. 2009) (quotations, alterations and citation omitted); *see also Trivedi v. New York State Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 726 (S.D.N.Y. 2011), *aff'd sub nom Seck v. Office of Court Admin.*, 582 F. App'x 47 (2d Cir. Nov. 6, 2014) ("[W]hen a party makes only conclusory or general objections [] the Court will review the Report strictly for clear error.[] Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal." (quotations, alterations and citation omitted)). Any portion of a report and recommendation to which no specific timely objection is made, or to which only general, conclusory or perfunctory objections are made, is reviewed only for clear error. *Owusu*, 655 F. Supp. 2d at 312-13; *see also Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 3d 95, 100-01 (E.D.N.Y. 2015).

Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

B. Objections

Initially, defendant's general objections to the Report's recommendation that its motion to dismiss be denied, requesting that this Court reject the Report for the reasons stated in its motion papers, (*see* Defendant's Objections to the Report ["Def. Obj."] at 1-2), are insufficient to invoke *de novo* review. *See, e.g. Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. May 18, 2018) (summary order) (holding that a general objection to a magistrate judge's report "merely referring the court to previously filed papers or arguments does not constitute an adequate objection under [] Fed. R. Civ. P. 72(b)." (quotations, alterations and citations omitted)); *Benitez v. Parmer*, 654 F. App'x 502, 503 (2d Cir. June 30, 2016) (summary order) (holding that the plaintiff's general objection to the magistrate judge's report and recommendation, which merely asked the district court to review his opposition to the defendants' motion to dismiss, was insufficient to obtain *de novo* review). Accordingly, except for the specific objections set forth below, the remainder of the Report is reviewed only for clear error.

Upon *de novo* review of the findings and conclusions in the Report to which defendant specifically objects, all motion papers and the entire record, and consideration of defendant's objections to the Report and plaintiff's response thereto, defendant's objections are overruled and the Report is accepted in its entirety.

1. Objections Relating to Plaintiff's Breach of Contract Claim

Defendant contends, *inter alia*, that Magistrate Judge Locke erred in concluding that the Buydown Deposit Agreement was ambiguous because it was not clear from the language therein "whether the parties agreed that interest would accrue at a flat rate of 3.875% throughout the Loan's term, or if a variable rate was applicable whereby the interest rate was initially 2.875%, increasing to 3.875% in the second year of repayment." (Report at 10). According to defendant, "[t]hat conclusion, which served as the foundation for the remainder of the [Report's] analysis of the motion to dismiss, is contrary to basic principles of contract interpretation" because, *inter alia*, (i) "[p]laintiff's interpretation of the Buydown Deposit Agreement would create an impermissible double benefit, far beyond what the parties could have intended[,] . . . [and] requires that the explicit promise to apply $79.70 of the buydown deposit to the interest portion of the mortgage payment be read out of the contract entirely," (Def. Obj. at 4-5); (ii) the Report's "interpretation that the Buydown Deposit Agreement . . . provided for an interest rate that was *not* 3.875% renders the unambiguous statement in the Buydown Payment Schedule that the Note '*will* bear an interest rate of 3.875%' meaningless[,]" (*id.* at 5-6) (emphasis in original); (iii) the conclusion "that the contract could be read to provide for 'a variable rate . . . whereby the interest rate was initially 2.875%, increasing to 3.875% in the second year of repayment' squarely contradicts the Note," the plain terms of which provide for a 3.875% interest rate, and since the Buydown Deposit Agreement provides that "[n]othing herein shall be construed to contradict the Note or Mortgage, and in the event of any conflict, the Note of Mortgage shall prevail[,]" that conclusion "is an impermissible construction of the Buydown Deposit Agreement[,]" (*id.* at 6-7) (emphasis omitted); (iv) the Report "never explained how an interpretation that treats 'Buydown Rate' and 'Interest Rate' as synonymous can be reconciled with the parties' use of two separate

4

terms within the same paragraph[,]" (*id.* at 7); and (v) the Report "indicated that a reference to a 2.875% interest rate in the Closing Disclosure, a separate document nowhere referenced in the Buyout Deposit Agreement, sufficed to create the necessary ambiguity," but since the Buydown Deposit Agreement is not ambiguous, "there is no basis for looking outside the four corners of the contract in search of further ambiguity." (*Id.* at 8).

Plaintiff's breach of contract claim (second cause of action) alleges: (1) that "[a]s consideration for Plaintiff and the Class Members to enter in to [sic] loans with Wells Fargo, Wells Fargo agreed that the interest rate on Plaintiff and Class Members' loans would be reduced during the first year[,]" (First Amended Complaint ["Am. Compl."], ¶ 78); and (ii) that defendant "violated these agreements by amortizing the loans at a higher rate than had been agreed, thereby causing Class Members damage and depriving them of the benefit of the contract." (*Id.*, ¶ 79).

The Buydown Deposit Agreement at issue provides, in relevant part:

> "THIS AGREEMENT is made between Wells Fargo Bank, N.A., hereafter called '*Mortgagee*,' and Alejandro Carrillo, hereafter called '*Borrowers*.' The Borrowers have obtained a residential mortgage loan from Mortgagee, and a sum of money, called the '*buydown deposit*' has been paid to and received by Mortgagee to hold and administer in accordance with this Agreement. In consideration of said loan, and the mutual agreements and undertakings recited *in all of the loan documents*, and set forth herein, the parties agree as follows:
>
> 1. The total sum of money paid to Mortgagee as a buydown deposit is Nine hundred twenty-six and three [sic] Dollars ($926.03). . . . This money is to be applied and paid by Mortgagee, on a periodic basis, toward monthly payments under the mortgage for the first 12 months of the mortgage loan. Each monthly payment from the buydown deposit will pay only a part of the interest portion of the total mortgage payment, and Borrowers will be required to pay the balance of each mortgage payment as it comes due. A schedule showing the application of the buydown deposit is attached as '*Exhibit A*' to this Agreement.
>
> 2. Mortgagee agrees that it will apply the buydown deposit according to the Schedule, as and when Borrowers pay their portion of each scheduled monthly payment, or as otherwise set forth in this Agreement.

5

> Payments will be made from the buydown deposit fund directly to the holder of the mortgage, or to its servicing agent.
>
> * * *
>
> 11. Nothing herein shall be construed to contradict the Note or Mortgage, and in the event of any conflict, the Note or Mortgage shall prevail.
>
> 12. The parties have entered into this agreement at the request of the Borrowers, and it is not required by Mortgagee nor is it a condition of the extension of credit by Mortgagee."

(Am. Compl., Ex. B) (emphasis added). The Buydown Payment Schedule attached as Exhibit A thereto provides:

> "Loan Amount: $144,000.00
>
> |  | **Buydown Rate** | **P&I** | **Difference** |
> |---|---|---|---|
> | 1st Period | 2.875% | $597.45 | $79.70 X 12 =$956.40 |
> |  |  |  | Total of Buydown Funds = $956.40 |
>
> The note will bear an interest rate of 3.875% and will have a principal and interest payment schedule as follows:
>
> 1st Period P & I                $677.15
>
> This is the schedule for principal and interest only. Additional amounts will be included in the payment to cover the cost of taxes, insurance and mortgage insurance. Please note that if you have not yet locked in an interest rate, all rates and principal and interest (P & I) payments as listed above may change 3 days prior to closing."

(*Id.*).

This Court agrees with Magistrate Judge Locke that the allegations in the amended complaint, coupled with the terms in all of the Loan Documents, present ambiguities precluding dismissal of plaintiff's breach of contract claim at the pleadings stage pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) ("At the motion to dismiss stage, a district court may

dismiss a breach of contract claim only if the terms of the contract are unambiguous.") "A contract is ambiguous under New York law 'if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* at 156-57 (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation omitted)). "A contract is unambiguous, however, if 'the contract language has a definite and precise meaning ... and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* (quoting *Chesapeake Energy*, 773 F.3d at 114).

Since reasonably intelligent people who examine all of the Loan Documents could have a difference of opinion whether the parties agreed to interest at a flat rate of 3.875% throughout the term of the loan, or at a variable rate of 2.875% for the initial twelve (12)-month period, increasing to 3.875% thereafter, the contract is ambiguous. Magistrate Judge Locke properly considered, and rejected, defendant's contentions to the contrary. Accordingly, so much of the Report as recommends denying the branch of defendant's motion seeking dismissal of plaintiff's breach of contract claim (second cause of action) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is accepted and, for the reasons set forth in the Report, that branch of defendant's motion is denied in its entirety.

2. Objections Relating to Plaintiff's N.Y. Gen. Bus. Law § 349 Claim

Initially, since, as set forth above, this Court accepts Magistrate Judge Locke's conclusion that the Loan Documents are ambiguous, defendant's objection that the Report improperly concluded that plaintiff "adequately pleaded the 'materially misleading conduct'

7

element of a GBL § 349 claim because . . . the loan documents . . . [are] 'ambiguous[,]'" (Def. Obj. at 9), is overruled and this Court similarly accepts that conclusion in the Report.

Defendant further contends, *inter alia*, that Magistrate Judge Locke erred in finding that plaintiff's "conclusory allegations that [it] used 'boilerplate' buydown deposit agreements are . . . sufficient to satisfy the consumer-oriented requirement under GBL § 349[,]" (Def. Obj. at 9), because such finding "would allow virtually any plaintiff in a mortgage dispute to transform their private contract claim into a GBL § 349 claim." (*Id.*). According to defendant, two (2) of the cases on which the Report relied in support thereof, *M&T Mortg. Corp. v. White*, 736 F. Supp. 2d 538 (E.D.N.Y. 2010), and *Kapsis v. Am. Home Mortg. Servicing, Inc.*, 923 F. Supp. 2d 430 (E.D.N.Y. 2013), "involved far more than bare allegations of 'boilerplate' contracts and have little in common with this case." (Def. Obj. at 9). In addition, defendant contends that plaintiff's allegations that it misrepresented the interest rate that would apply to his mortgage "are specific to him and not to the public generally." (*Id.* at 10).

Magistrate Judge Locke correctly found, in essence, that the allegations in the amended complaint are sufficient at the pleadings stage to state a plausible claim that the allegedly deceptive practice of defendant "potentially affects similarly situated consumers," *SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996), *i.e.*, it has "a broad[] impact on consumers at large," *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y. 1995); and, unlike the offending conduct at issue in the cases cited by defendant, is not merely a "single-shot transaction" unique to the parties. *Silverman v. Household Fin. Realty Corp. of N.Y.*, 979 F. Supp. 2d 313, 317 (E.D.N.Y. 2013) (dismissing the plaintiffs' N.Y. Gen. Bus. Law § 349 claim involving issues of whether their "unique debt to income ratio was appropriate, and whether the

8

nature of any advice allegedly given them regarding how to proceed during the loan modification application process was misleading," because those allegations were "specific to them and their individual real estate transaction."); *see, e.g. H&H Envtl. Sys., Inc. v. Evanston Ins. Co.*, No. 6:18-cv-06315, 2019 WL 1129434, at * 9 (W.D.N.Y. Mar. 12, 2019) (finding that the plaintiffs' allegations challenging the defendants' handling of their insurance claims, and asserting only that, "[u]pon information and belief, when confronted with a policyholder's significant loss claim, Defendants regularly and routinely engage in the practice of avoiding or inordinately delaying the settlement of the claim[,]" were insufficient to state a plausible claim under N.Y. Gen. Bus. Law § 349); *Disa Realty, Inc. v. Rao*, 168 A.D.3d 1037, 93 N.Y.S.3d 349 (N.Y. App. Div. 2019) (affirming the trial court's grant of summary judgment dismissing the defendant's counterclaim alleging that the plaintiff violated N.Y. Gen. Bus. Law § 349 in extending a loan to the defendant by making false representations about the subject property's income and expenses, since those misrepresentations "were specific to the subject property and, thus, do not constitute consumer-oriented conduct. . . ."); *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-cv-7500, 2015 WL 585589, at * 9 (S.D.N.Y. Feb. 11, 2015) (dismissing the plaintiff's N.Y. Gen. Bus. Law § 349 claim based upon the defendant's purported "fraudulent loan modification program," and the plaintiff's claim of entitlement to modification thereunder, as specific to those parties, and holding that "a GBL § 349 claim must be dismissed when a plaintiff's claims, as here, only implicate Defendants' conduct towards plaintiff [] and lack any assertion demonstrating that Defendants engaged in deceptive business practices with the public in general." (quotations, alterations and citation omitted)); *Seller v. Citimortgage, Inc.*, 118 A.D.3d 511, 988 N.Y.S.2d 32 (N.Y. App. Div. 2014) (holding that the plaintiffs' allegations that the defendant told them that in order "to qualify for a loan modification they had to be delinquent in their mortgage payments,

9

and instructed them . . . to make four mortgage payments at a reduced rate," was "specific to them" and, thus, not consumer-oriented).

Specifically, plaintiff's allegations, *inter alia*, that all members of the proposed class have been subjected to similar deceptive conduct in that they all have entered into standard-form buydown agreements in which defendant "promised a lower interest rate for an initial period followed by a higher interest rate for the remainder of the life of the loan; . . . but, during the initial period, amortized the loan at a rate higher than the lowest promised rate," (Am. Compl., ¶ 50), are sufficient to state a plausible claim that defendant's conduct was consumer-oriented. *See, e.g. Weir v. Cenlar FSB*, No. 16-cv-8650, 2018 WL 3443173, at * 13 (S.D.N.Y. July 17, 2018) (finding that, "[r]egardless of the differing nature of the Plaintiffs' Security Instruments," plaintiffs' allegations "that all mortgagors would be subject to the same practices and policies of charging for unreasonable property inspections," were sufficient to state a plausible claim that the defendants' actions were consumer-oriented (quotations, alterations and citation omitted)); *Maas v. Spencer Leasing Corp.*, No. 12-cv-2951, 2013 WL 5308859, at * 13 (E.D.N.Y. Sept. 18, 2013) (finding that the plaintiff's allegations that the defendant "routinely hides the true cost of borrowing from its customers, by as in Plaintiff's case, decreasing the actual down-payment received and inflating the amount financed" plausibly alleged consumer-oriented conduct; and holding that "[w]here as here, the record demonstrates that the transactions involved standard documents routinely presented to similar customers, the plaintiff has made a threshold showing that the practice was consumer oriented." (quotations, alterations and citations omitted)); *Kapsis*, 923 F. Supp. 2d at 449-50 (finding that the plaintiff's allegations, *inter alia*, that the defendant, as a servicer of residential mortgage loans, failed to properly credit accounts after payments were made and to timely respond to communications sent by debtors; issued false or misleading

10

monthly statements and escrow projection statements; and refused to provide detailed accountings to debtors for sums allegedly owed, "adequately alleged a consumer-oriented practice sufficient to state a claim under Section 349.") Accordingly, so much of the Report as recommends denying the branch of defendant's motion seeking dismissal of plaintiff's N.Y. Gen. Bus. Law § 349 claim (first cause of action) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is accepted and, for the reasons set forth in the Report, that branch of defendant's motion is denied in its entirety.

### 3. Plaintiff's TILA Claim

Initially, as set forth above, this Court accepts Magistrate Judge Locke's conclusion that the amended complaint states a plausible breach of contract claim against defendant. Accordingly, defendant's objection that "[b]ecause the [Report] incorrectly interpreted the Buydown Deposit Agreement, and the breach of contract claim should be dismissed, the TILA claim fails as well[,]" (Def. Obj. at 10), is overruled; and the Court accepts Magistrate Judge Locke's conclusion that plaintiff's "TILA cause of action is plausible for many of the reasons that the other claims are viable." (Report at 19).

Defendant further contends, *inter alia*, (i) that "the only TILA provision the [Report] identified as a basis for Plaintiff's claim was 15 U.S.C. § 1638(b)(2)(C)(ii)," but that provision "has nothing to do with Plaintiff's TILA claim," purportedly alleging that defendant "violated TILA because 'the disclosures set forth one interest rate for the initial period . . . without disclosing that it was not actually an interest rate[,]'" (Def. Obj. at 10-11) (quoting Doc. No. 35 at 18 [Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss the First Amended Complaint ("Plf. Mem.")]); and (ii) that "the only disclosure § 1638(b)(2)(C)(ii)

11

requires is one 'that reflects the maximum payment amount of the regular required payments on the extension of credit, based on the maximum interest rate allowed under the contract[,]' [a]nd there is no dispute that the Closing Disclosure accurately reflected the regular required payments based on the 3.875% interest rate allowable under the Note." (Def. Obj. at 11).

Contrary to defendant's first contention, plaintiff alleges that it violated the TILA "because the disclosures set forth one interest rate for the initial period (2.875%) without disclosing that it was not actually an interest rate *and that Plaintiff would effectively be charged a higher rate due to Wells Fargo's method of amortization*." (Plf. Mem. at 18) (citing Am. Compl., ¶¶ 83-86). Defendant's objections conveniently omit the italicized language.

In addition, contrary to defendant's second contention, 15 U.S.C. § 1638(b)(2)(C)(ii) provides, in pertinent part,

> "In the case of an extension of credit that is secured by the dwelling of a consumer, under which the annual rate of interest is variable, or with respect to which the regular payments may otherwise be variable, in addition to the other disclosures required by subsection (a), the disclosures provided under this subsection shall do the following: . . . State in conspicuous type size and format examples of adjustments to the regular required payment on the extension of credit based on the change in the interest rates specified by the contract for such extension of credit. *Among the examples required to be provided under this clause* is an example that reflects the maximum payment amount of the regular required payments on the extension of credit, based on the maximum interest rate allowed under the contract, in accordance with the rules of the Bureau [of Consumer Financial Protection]. . . ."

15 U.S.C. § 1638(b)(2)(C)(ii) (emphasis added). Thus, rather than being "the only disclosure" required thereunder, (Def. Obj. at 11), the disclosure of "the maximum payment amount of the regular required payments on the extension of credit, based on the maximum interest rate allowed under the contract[,]" 15 U.S.C. § 1638(b)(2)(C)(ii), is but one example of the disclosures required pursuant to that provision.

12

This Court agrees with Magistrate Judge Locke's conclusions: (i) that "although the Loan Documents appear to state the 'examples of adjustments to the regular required payment,' these alterations are not in fact 'based on the change in the interest rates specified by the contract,' as required by the statute. . . . Instead, the reduced monthly payments in the first year merely account for the prorated deposit being applied[,]" (Report at 19-20) (quoting 15 U.S.C. § 1638(b)(2)(C)(ii)); and (ii) that "[t]he Loan Documents' apparent representation that Carrillo would be charged a 2.875% interest rate in his first year of repayment, when the rate being applied was 3.875%, potentially renders the Closing Disclosure an erroneous representation of the Loan's terms." (*Id.* at 19). Accordingly, so much of the Report as recommends denying the branch of defendant's motion seeking dismissal of plaintiff's TILA claim (third cause of action) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is accepted and, for the reasons set forth in the Report, that branch of defendant's motion is denied in its entirety.

### C. Remainder of Report

There being no clear error on the face of the Report with respect to the findings and conclusions of Magistrate Judge Locke to which no specific objections are interposed, those branches of the Report are accepted in their entirety.

## II. Conclusion

For the reasons set forth above, defendant's objections are overruled; the Report is accepted in its entirety; and, for the reasons set forth therein, defendant's motion to dismiss plaintiff's claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or,

in the alternative, to strike the class allegations in the first amended complaint under Rules 12(f) and 23(d)(1)(D) of the Federal Rules of Civil Procedure, is denied in its entirety.

SO ORDERED.

                                                           /s/ *Sandra J. Feuerstein*
                                                     SANDRA J. FEUERSTEIN
                                                     United States District Judge

Dated:  August 20, 2019
         Central Islip, New York