**RIN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEJANDRO CARRILLO, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>   v.<br><br>WELLS FARGO BANK, N.A.,<br><br>               Defendant. | Case No. 2:18-cv-03095-PKC-JMW<br><br>ECF Case<br><br>Judge Pamela K. Chen<br>Magistrate Judge James M. Wicks<br><br>**JURY DEMANDED HEREON** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page No.:**

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ................................................................... 2

    A.    The litigation and settlement negotiations. ........................................ 2

    B.    The settlement terms. ....................................................................... 5

        1.    The Class ............................................................................... 5

        2.    Second Amended Complaint .................................................. 6

        3.    Monetary Relief ..................................................................... 6

            a.    Settlement Class Member Payments ........................... 6

            b.    Administration Costs ................................................... 8

            c.    Attorneys' Fees, Litigation Expenses, and Service Award .......................................................................... 8

        4.    Release .................................................................................. 9

    C.    Preliminary approval and notice. ...................................................... 9

III.  AUTHORITY AND ARGUMENT ...................................................... 9

    A.    The settlement should be approved as fair, reasonable, and adequate ................. 10

        1.    Plaintiff and his counsel have adequately represented the Class. ............. 11

        2.    The settlement is the product of informed, arm's-length negotiations. ................................................................... 12

        3.    The relief provided by the settlement is adequate ................... 13

            a.    The stage of the proceedings and the amount of discovery completed .................................................. 13

            b.    The costs, risks, and delay of trial and appeal ............ 13

            c.    The reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation ..................................................................... 14

            d.    Wells Fargo's ability to withstand a greater judgment ................ 16

            e.    The effectiveness of distributing relief to the class, including the method of processing class member claims, if required ......................................................... 16

            f.    The terms of any proposed award of attorneys' fees. ................... 17

        4.    The settlement treats all Settlement Class Members fairly ................ 17

        5.    The reaction of the Settlement Class .................................... 17

    B.    The Settlement Class should be finally certified ............................... 18

        1.    The Rule 23(a) requirements are satisfied ............................. 18

      2.     The Rule 23(b)(3) requirements are satisfied ........................................... 19

   C.    The notice program complied with Rule 23 and due process. ............................. 21

IV.   CONCLUSION ................................................................................................ 24

# TABLE OF AUTHORITIES

**Page No.:**

## FEDERAL CASES

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)...................................................................................................... 21

*Ayzelman v. Statewide Credit Servs. Corp.,*
  242 F.R.D. 23 (E.D.N.Y. 2007) .................................................................................... 15

*Beebe v. V&J Nat'l Enter., LLC,*
  No. 6:17-CV-06075 EAW, 2020 WL 2833009 (W.D.N.Y. June 1, 2020)......................... 14-15

*Bolanos v. Norwegian Cruise Lines Ltd.,*
  212 F.R.D. 144 (S.D.N.Y. 2002) ................................................................................... 19

*Calibuso v. Bank of Am. Corp.,*
  299 F.R.D. 359 (E.D.N.Y. 2014) ................................................................................... 11

*Carrillo v. Wells Fargo Bank, N.A.,*
  2019 WL 3714801 (E.D.N.Y. May 10, 2019) ................................................................... 2

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974)........................................................................................... 11

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995)............................................................................................. 18

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,*
  502 F.3d 91 (2d Cir. 2007)............................................................................................. 11

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001)............................................................................................. 16

*Erica P. John Fund, Inc. v. Halliburton,*
  131 S. Ct. 2179 (2011)................................................................................................... 19

*Fleisher v. Phoenix Life Ins. Co.,*
  No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .............................. 14, 16

*Fogarazzao v. Lehman Bros., Inc.,*
  232 F.R.D. 176 (S.D.N.Y. 2005) ................................................................................... 19

*Gen. Tel. Co. of the Sw. v. Falcon,*
  457 U.S. 147 (1982)....................................................................................................... 21

*Hall v. ProSource Techs., LLC*,
No. 14-cv-2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ...................................... 13, 14, 15

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................................... 17

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020)................................................................................. 13-14

*In re Parking Heaters Antitrust Litig.*,
No. 15-MC-0940 (DLI) (JO), 2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) ........................ 12

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .......... 11, 16, 17

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013)................................................................................................... 20

*Kalkstein v. Collecto, Inc.*,
304 F.R.D. 114 (E.D.N.Y. Jan. 5, 2015).............................................................................. 18

*Kaye v. Amicus Mediation & Arbitration Group, Inc.*,
300 F.R.D. 67 (D. Conn. 2014)............................................................................................. 21

*Kelen v. World Fin. Network Nat'l Bank*,
295 F.R.D. 87 (S.D.N.Y. 2013) ............................................................................................ 20

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015)..................................................................................... 16

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. May 8, 2012) ...................................................................... 15

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ................................................................................................ 12

*Roach v. T.L Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015).................................................................................................. 20

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993).................................................................................................. 19

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................ 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................... 10, 14, 22

*Zivkovic v. Laura Christy LLC*,
    329 F.R.D. 61 (S.D.N.Y. 2018) ........................................................................ 21

## OTHER AUTHORITIES

Manual for Complex Litigation (Fourth) §§ 21.632-21.634 (4th ed. May 2020 update) ............. 10

William B. Rubenstein, Newberg on Class Actions § 13.1 (5th ed. June 2020 update) .............. 10

## RULES

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ........................................................................... 19, 21, 22

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 22

Fed. R. Civ. P. 23(e) ......................................................................................... 10

Fed. R. Civ. P. 23(e)(1) ................................................................................. 21-22

Fed. R. Civ. P. 23(e)(2) ................................................................................ 10, 11

Fed. R. Civ. P. 23(e)(3) ..................................................................................... 11

## I.    INTRODUCTION

Wells Fargo is one of the largest originators and servicers of residential mortgages nationwide, making hundreds of thousands of residential loans every year. Wells Fargo offered consumers a residential mortgage feature called a Buydown Agreement. This feature—also known as a "buydown deposit agreement"—lowered the required monthly payment due under a residential mortgage for up to the first three years of a borrower's loan. According to the allegations in this lawsuit, the Buydown Agreement, and related loan disclosures, presented this as an interest rate reduction. But rather than lower the interest rate at the start of the loan, Wells Fargo collects a lower monthly payment from the borrower that "corresponds" to a payment under the lower rate while still applying the original interest rate to the loan. Plaintiff Alejandro Carillo alleges that he paid more interest on his mortgage as a result of this conduct, and that Wells Fargo's conduct breaches its contractual obligations and violates the Truth in Lending Act and New York General Business Law § 349. Wells Fargo denies Plaintiff's allegations.

Following an investigation and two years of contentious litigation, the parties negotiated a class-wide settlement of Plaintiff's claims. Wells Fargo has agreed to pay $6,945,095 to establish a non-reversionary settlement fund for the benefit of Plaintiff and Settlement Class Members who entered into a Buydown Agreement with Wells Fargo within the class period. All Settlement Class Members will receive a significant cash payment, ranging between $50 and $14,056, depending on how much the Class Member allegedly overpaid and whether the Class Member is entitled to statutory damages under TILA. The mean payment is $422 per loan and the median payment is $363. Class Members do not have to submit claim forms to receive a payment.

The Court granted preliminary approval of the settlement and the Settlement Administrator distributed notice to Settlement Class Members. Plaintiff now requests that the Court approve the settlement as fair, reasonable, and adequate. The factors courts consider support granting final approval of the settlement. The settlement is an outstanding result for Class Members, particularly given the cost, delay and risks of continued litigation. The parties devoted sufficient time to discovery and motion practice and have a solid understanding of the strengths and weaknesses of their positions. The settlement was negotiated with the assistance of a well-respected mediator. Class Counsel, who have significant experience in litigating these types of cases, fully support the settlement. That no Class Member objected to the settlement and only three opted out also favors final approval.

Plaintiff respectfully requests that the Court grant his motion.

## II.    STATEMENT OF FACTS

### A.    The litigation and settlement negotiations.

Following an investigation that included hiring Kevin Byers, CPA, a forensic accountant with expertise in loan analysis, as a consulting expert, Plaintiff filed this lawsuit on May 25, 2018. ECF No. 1; Terrell Decl. ¶ 2. Plaintiff alleged "that Wells Fargo offers its customers buydown agreements that promise a reduced interest rate on their mortgage loans in the first year of repayment, but then amortizes the payments by applying a higher rate from the onset." *Carrillo v. Wells Fargo Bank, N.A.*, 2019 WL 3714801, at *7 (E.D.N.Y. May 10, 2019). Wells Fargo denies all material allegations in the Complaint. *See* ECF No. 56 (Answer).

Wells Fargo moved to dismiss for failure to state a claim or, in the alternative, to strike class allegations. ECF No. 14. In response, Plaintiff filed a First Amended Complaint on September 7, 2018. ECF No. 17. Wells Fargo again moved to dismiss for failure to state a claim

or, in the alternative, to strike class allegations. ECF No. 18. After the motion was fully briefed, ECF Nos. 33–36, Magistrate Judge Steven I. Locke recommended that Wells Fargo's motion be denied. ECF No. 46. The Court adopted the Magistrate Judge's recommendation over Wells Fargo's objections. ECF No. 53.

Following the parties' Rule 26(f) discovery conference, Plaintiff served requests for production of documents on Wells Fargo. Terrell Decl. ¶ 3. Wells Fargo filed a letter motion for a protective order to temporarily stay discovery until its motion to dismiss was resolved, which the Court granted. ECF Nos. 38, 45. After Wells Fargo's motion to dismiss was denied, Plaintiff served a new set of requests for production and interrogatories, focusing on Plaintiff's and Class Members' loan documents, Wells Fargo's amortization, buydown agreement, and disclosure policies, and marketing materials relating to buydown agreements. Terrell Decl. ¶ 3.

The parties engaged in motion practice regarding various aspects of the discovery process. For example, the parties reached an impasse in negotiating the terms of a joint stipulated protective order governing the designation and treatment of confidential material produced in discovery. Terrell Decl. ¶ 4. Plaintiff moved for a court order to settle the dispute, which the Court denied with instructions for Wells Fargo to revise the proposed confidentiality agreement and "commence producing responsive documents as soon as possible." ECF No. 64.

After Wells Fargo's initial document productions in November 2019 and January 2020, Plaintiff filed a motion to compel Wells Fargo to produce additional documents relating to its buydown feature. ECF Nos. 69, 79. The Court assisted the parties in reaching a resolution to that dispute, and the parties worked with Magistrate Judge Locke to address additional discovery issues as they arose at hearings held on March 3, 2020 and April 23, 2020. Wells Fargo ultimately produced loan-level data pertaining to loan terms, interest rates buydown agreement

terms, and payment-related information for each proposed class member (*see* ECF. No. 79) as well as nearly half a million pages of documents reflecting the buydown agreements, loan disclosures, and loan documents that they used during the relevant time. *Id.* The parties negotiated a sampling protocol (including a procedure for identifying which class members' files would be sampled and which loan documents would be part of the sample). Pursuant to that agreement, Wells Fargo produced loan files relating to 122 proposed class members, *Id.* Wells Fargo also produced communications concerning policy changes and Wells Fargo's use of buydown agreements over time. *Id.* With the benefit of these documents, Plaintiff took a Rule 30(b)(6) deposition of Wells Fargo. *Id.*

During the course of discovery, Plaintiff served Wolters Kluwer Financial Services U.S. with a subpoena, seeking documents that provided the basis for certain of Wells Fargo's buydown forms, including loan disclosures schedules, and other forms. Although Wolters Kluwer initially objected to producing much of the requested information, it eventually produced redline form documents for Wells Fargo's buydown agreements. *Id*. ¶ 5.

Wells Fargo propounded written discovery requests on Plaintiff, and Plaintiff provided written responses and produced responsive documents. *Id*. ¶ 6.

On July 29, 2020, the parties participated in a full day mediation session with Hunter R. Hughes III of Hunter ADR. Terrell Decl. ¶ 7. Mr. Hughes is a well-respected mediator with a "nationwide practice that focuses on class, collective, and complex cases." https://www.nadn.org/hunter-hughes. The next day, the parties memorialized the material settlement terms in a tentative agreement. Among other things, the term sheet set forth a process for confirming the number of qualifying loans and the total amount needed for the Settlement

Fund by analyzing nationwide data relating to Wells Fargo's Buydown Agreements. *Id.* At all times the settlement discussions were arm's-length and adversarial in nature. *Id.*

The parties then worked together to finalize the settlement, including many significant details and terms; production and review of extensive confirmatory discovery; production, analysis and repeated refinement of the loan and servicing data compilation necessary to calculate the recovery of every class member; numerous drafts of all of the settlement documents, proposed orders, notices, and the second amended complaint; and addressed issues relating to the settlement distribution process and other settlement logistics. Terrell Decl. ¶ 8.

**B.    The settlement terms.**

The terms of the parties' proposed settlement are set forth in the Settlement Agreement, which is attached as Exhibit 1 to the Declaration of Beth E. Terrell, and summarized here.

1.    The Class

The parties request certification for settlement purposes only of the following Classes (referred to collectively in the settlement as the "Class"):

> **TILA Class**. All persons in the United States (a) who entered into Buydown Agreements with Wells Fargo in residential real estate mortgage transactions; (b) within one year prior to the filing of the Initial Complaint; (c) in which Wells Fargo disclosed in the borrower's loan Closing Disclosure a lower effective interest rate for an initial period followed by a higher interest rate for the remainder of the life of the loan; and (d) as to whom, during the initial period, Wells Fargo amortized the loan at a rate higher than the lowest disclosed effective rate.
>
> **Breach of Contract Class**. All persons in the United States who during the Class Period entered into Buydown Agreements with Wells Fargo in residential real estate mortgage transactions in which Wells Fargo disclosed a lower effective interest rate for an initial period followed by a higher interest rate for the remainder of the life of the loan but, during the initial period, amortized the loan at a rate higher than the lowest disclosed effective rate.

The "Class Period" is (i) for all Class Members who obtained a Buydown Agreement in connection with residential real estate located within the state of New York, six years from the filing date of the Initial Complaint (May 25, 2018); and (ii) for all non-New York real estate transactions, the relevant statute of limitations period applicable to the jurisdiction in which the mortgage property is located, and the applicable date range, as listed on Exhibit 2 to the Settlement Agreement. Settlement Agreement ¶ 25. The Settlement Class is composed of Class Members who do not exclude themselves from the Class.

      2.    <u>Second Amended Complaint</u>

The Settlement Agreement required Plaintiff to file a Second Amended Complaint, which Plaintiff did on March 5, 2021. ECF No. 94. As in the Initial Complaint and First Amended Complaint, in the Second Amended Complaint Plaintiff challenges Wells Fargo's implementation and disclosure of the Buydown Agreement feature. *Id.* Plaintiff also seeks to certify the TILA Class and the Breach of Contract Class. *Id.*

      3.    <u>Monetary Relief</u>

The Settlement Agreement requires Wells Fargo to pay $6,945,095 into a Qualified Settlement Fund. Settlement Agreement ¶ 62. The Settlement Fund will be used to pay Cash Awards to all Settlement Class Members; administration costs estimated at approximately $51,772; any expenses, taxes and fees associated with establishing and maintaining the Qualified Settlement Fund; Court-approved attorneys' fees and litigation costs to Class Counsel; and a Court-approved service award to Plaintiff. Settlement Agreement ¶¶ 62, 94.

      a.    *Settlement Class Member Payments*

Each Settlement Class Member will receive a Cash Award from the Net Settlement Fund. Settlement Agreement ¶ 70. The Net Settlement Fund is calculated by subtracting Court-awarded

attorneys' fees and costs and service award for Plaintiff, as well as Court-approved settlement administration costs from the Settlement Fund. Of the Net Settlement Fund, $250,000 will be allocated to TILA statutory damages. Each TILA Settlement Class Member will receive a pro rata share of the TILA statutory damages (the "TILA Award Payment"). Individual TILA Award Payments will be calculated using the following formula: $250,000 divided by the total Qualifying Loans times the number of Qualifying Loans the TILA Settlement Class Member has ($250,000/total Qualifying Loans x TILA Settlement Class Member loans). A Qualifying Loan is a loan issued in the Class Period and subject to a Buydown Agreement.

The Remaining Settlement Fund will be distributed pro rata among Settlement Class Members based on Settlement Class Members' actual damages as determined by Class Counsel, utilizing a formula that divides the Remaining Settlement Fund by total actual damages times the individual Settlement Class Member's actual damages. Settlement Agreement ¶ 70(b). No Settlement Class Member will receive less than $50. *Id.* ¶ 70(c). The average (mean) recovery is $422 per loan. The median recovery is $363 per loan. The proposed distribution of settlement recoveries is summarized in the following chart:

| Estimated Settlement Amount Per Loan | Number of Loans |
|---|---|
| $50 | 106 |
| $50.01-$100 | 316 |
| $100.01-$500 | 7,398 |
| $500.01-$1,000 | 2,645 |
| $1,000.01-$5,000 | 293 |
| $5,000.01-$14,056.09 | 14 |

Class Members were not required to submit a claim form to receive a payment. Cash Award checks will be mailed to each Settlement Class member. Settlement Agreement ¶ 78. The Settlement Administrator will make reasonable efforts to locate the proper address for any Settlement Class Member whose check is returned as undeliverable and will re-mail it once to the updated address. *Id.*

   b. *Administration Costs*

JND was retained and approved by the Court to serve as Settlement Administrator. JND is responsible for preparing and sending notice (via U.S. mail), establishing and maintaining the Qualified Settlement Fund, fielding questions from Class Members, establishing and maintaining a settlement website, establishing a toll-free phone number, serving CAFA notice, processing Opt-Out requests, and distributing Cash Award checks to the Settlement Class Members. Settlement Agreement ¶ 92. JND estimated its costs for administering the notice and settlement to be $51,772, based on a competitive bid tied to the class size and scope of notice. Settlement Agreement ¶ 94. To the extent JND's final costs exceed $51,772, the parties will supplement this filing before the final approval hearing with (1) the final cost number and (2) an explanation of how any excess administration costs impact the amount of the settlement awards.

   c. *Attorneys' Fees, Litigation Expenses, and Service Award*

Class Counsel moved for an award of attorneys' fees in an amount of one-third of the Settlement Fund, or $2,314,800, reimbursement of $17,087 in out-of-pocket litigation costs and expenses incurred in prosecuting this action, and a service award of $12,5000 for Plaintiff Carillo. ECF Nos. 97-100; *see also* Settlement Agreement ¶ 116. The Settlement Agreement is not contingent on the amount of attorneys' fees, costs, or service award approved by the Court. Settlement Agreement ¶ 119.

4.    Release

In exchange for the settlement benefits, Settlement Class Members will release claims against Wells Fargo and other Released Parties, which include Wells Fargo's past, present and future parents, subsidiaries, affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, agents, general partners, limited partners, principals, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, assigns, or related entities, and each of their respective executors, successors, and legal representatives. Settlement Agreement ¶¶ 50, 82. The release is tailored to the claims asserted in this litigation and claims that could have been alleged asserting that excess interest was assessed, charged or collected, or that the loan allegedly was inappropriately amortized in connection with the application, implementation or use of any Buydown Agreement. *Id.*

C.    **Preliminary approval and notice.**

The Court granted preliminary approval of the settlement on March 8, 2021, finding that upon "preliminary examination … the proposed settlement is fair, reasonable and adequate, and that a hearing should be held after notice to the Class of the proposed settlement to finally determine whether the proposed Settlement is fair, reasonable and adequate and whether a Final Approval Order and Judgment should be entered in this Litigation." ECF No. 95 at 1. The Court conditionally certified the Settlement Class and approved the Notice Program. *Id.* ¶¶ 19-23. JND implemented the Notice Program, as discussed below.

**III.    AUTHORITY AND ARGUMENT**

Federal courts strongly favor and encourage settlements. The Second Circuit is "mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The

compromise of complex litigation is encouraged by the courts and favored by public policy."

*Wal-Mart Stores*, *Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal citation omitted); *see also* William B. Rubenstein, Newberg on Class Actions § 13.1 (5th ed. June 2020 update) (citing cases). The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement and certification of a settlement class; (2) dissemination of notice of the settlement to class members; and (3) a "fairness hearing" or "final approval hearing," at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. Manual for Complex Litigation (Fourth) §§ 21.632-21.634 (4th ed. May 2020 update). This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* Newberg § 13.1.

Following preliminary approval and dissemination of notice, Plaintiff now asks the Court to take the final step in the approval process by finally certifying the Settlement Class and granting final approval of the settlement as fair, reasonable, and adequate.

**A.      The settlement should be approved as fair, reasonable, and adequate.**

Proposed class action settlements are not effective unless approved by the Court. Fed. R. Civ. P. 23(e). When evaluating a class settlement, courts consider the factors outlined in Rule 23(e)(2), which include whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other."

The Rule 23(e)(2) factors supplement the nine factors traditionally considered by courts in this circuit, which are set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 366 (E.D.N.Y. 2014).

Consideration of these factors supports final approval of the settlement.

1.    <u>Plaintiff and his counsel have adequately represented the Class.</u>

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472, at *17 (E.D.N.Y. Dec. 16, 2019) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). Plaintiff has no interests antagonistic to the interests of other Class Members, who have all been subject to the same alleged conduct by Wells Fargo, suffered the same type of alleged damages, and will recover a fair share of the Settlement Fund. Plaintiff

11

has demonstrated his interest in vigorously pursuing the claims of the Class by actively participating in the litigation. *See* ECF No. 101 (Declaration of Alejandro Carrillo). Class Counsel have significant experience in litigating and resolving class actions, including consumer protection litigation. ECF No. 99 (Terrell Decl.) ¶¶ 3-10; ECF No. 100 (Schlanger Decl.) ¶¶ 5-25. This factor therefore supports final approval of the settlement.

       2.    <u>The settlement is the product of informed, arm's-length negotiations.</u>

Courts must consider the procedural fairness of a settlement, analyzing "the negotiation process 'in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves.'" *In re Parking Heaters Antitrust Litig.*, No. 15-MC-0940 (DLI) (JO), 2019 WL 8137325, at *3 (E.D.N.Y. Aug. 15, 2019). This settlement was negotiated after more than two years of litigation and with the assistance of an experienced mediator, Hunter R. Hughes III of Hunter ADR. At all times the settlement discussions, which took place during the mediation and in subsequent conversations, were arm's-length and adversarial in nature. Terrell Decl. ¶ 7. A class settlement reached after extensive arm's-length negotiations by experienced, competent counsel knowledgeable in complex class litigation is entitled to "a presumption of fairness." *In re Parking Heaters*, 2019 WL 8137325, at *3; *see also Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). Plaintiff's counsel, experienced class action litigators who have litigated and settled dozens of consumer protection cases against large corporate entities like Wells Fargo, are satisfied that they obtained the best deal possible for the Class. Terrell Decl. ¶ 9. This factor therefore supports final approval of the settlement.

3.      The relief provided by the settlement is adequate.

This factor favors approval of the settlement because the $6,945,095 Plaintiff recovered

for the Settlement Class is an outstanding result, particularly given the risks and cost of

continued litigation.

a.      The stage of the proceedings and the amount of discovery completed.

In evaluating the reasonableness of a settlement, courts consider whether the litigation

has advanced to a stage where the parties "have a clear view of the strengths and weaknesses of

their cases." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL

1087261, at *3 (S.D.N.Y. May 14, 2004) (citation omitted). Having litigated this case for over

two years, including substantial discovery and motion practice, the parties have a comprehensive

understanding of the risks of continued litigation. The parties were well positioned to negotiate a

settlement that is "reasonable … in light of the many uncertainties the class faces." *Hall v.

ProSource Techs., LLC*, No. 14-cv-2502, 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016)

(citation omitted).

b.      The costs, risks, and delay of trial and appeal.

While the parties have engaged in significant discovery and motion practice, there is still

substantial work remaining to prepare the case for trial. Among other things, the parties would

have to complete fact discovery and expert discovery. Plaintiff has not yet moved for class

certification and anticipates that Wells Fargo's opposition would be robust. Motions for

summary judgment would likely follow, presenting further risk and cost. And the parties

recognize that the outcome of trial can be uncertain regardless of how confident one may be

going in. Even if Plaintiff prevailed at trial, Wells Fargo would undoubtedly appeal, requiring

"further time and resources with no certainty of a favorable outcome." *In re Namenda Direct*

*Purchaser Antitrust Litig.,* 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also Fleisher v.*

*Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *6 (S.D.N.Y. Sept. 9, 2015)

("Even if the Class could recover a judgment at trial and survive any decertification challenges,

post-verdict and appellate litigation would likely have lasted for years."). A loss at any stage

could leave Class Members with no recovery at all. As courts in this district recognize, "[w]here,

as here, 'the settlement agreement assures immediate payment of substantial amounts to class

members, even if it means sacrificing speculative payment of hypothetically larger amount[s]

years down the road, settlement is reasonable....'" *Hall*, 2016 WL 1555128, at *8 (citation

omitted).

      c.     *The reasonableness of the settlement fund in light of the best possible
              recovery and the attendant risks of litigation.*

     The Second Circuit has explained that the "range of reasonableness" reflects "a range

which recognizes the uncertainties of law and fact in any particular case and the concomitant

risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores*, 396

F.3d at 119 (citation omitted). Determining "whether a settlement amount is reasonable does not

involve the use of a mathematical equation yielding a particularized sum." *Fleisher*, 2015 WL

10847814, at *10. And "[t]he fact that a proposed settlement may only amount to a fraction of

the potential recovery does not, in and of itself, mean that the proposed settlement is grossly

inadequate and should be disapproved." *In re Namenda*, 462 F. Supp. 3d at 315 (citation

omitted).

     The average amount Settlement Class Members will receive is $422.29, which is

approximately 43% of the maximum damages they might recover if Plaintiff prevailed at trial

and recovered all potentially available damages. Terrell Decl. ¶ 10. Courts approve settlements

with similar recoveries. *See, e.g., Beebe v. V&J Nat'l Enter., LLC*, No. 6:17-CV-06075 EAW,

2020 WL 2833009, at *7 (W.D.N.Y. June 1, 2020) (approving settlement where total settlement amounted 31% of actual damages); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. May 8, 2012) (approving settlement where plaintiff demonstrated that settlement amount represents approximately 38% of the estimated value of the case). While the recovery for the Class could be greater if Plaintiff succeeded on all claims at trial, survived the inevitable appeal, and collected the resulting judgment, "courts in this district have held that 'the question ... is not whether the settlement represents the highest recovery possible ... but whether it represents a reasonable one in light of the many uncertainties the class faces.'" *Hall*, 2016 WL 1555128, at *8 (alterations in original) (citation omitted).

The settlement is reasonable given the uncertainties in this case. The uncertainties Class Members face include the cost, risk and delay of continued litigation discussed above. The outcome of the dispute at the heart of this litigation is also uncertain. Ruling on Wells Fargo's motion to dismiss, the Magistrate Judge found the key language in Class Members' loan documents to be ambiguous and the Court agreed that "reasonably intelligent people who examine all of the Loan Documents" could reach different opinions about the interest rate to be applied. ECF No. 46 at 10-11, 19-20; ECF No. 53 at 6-7. While this conclusion was based purely on the language of the documents and in the context of a motion to dismiss decided solely on the pleadings, it highlights the fact that both parties are exposed to risk should litigation continue. *See Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 27 (E.D.N.Y. 2007) (finding that the risk of establishing liability weighed in favor of settlement approval where "defendants ... presented several affirmative defenses through which they may avoid liability"). And even if Plaintiff prevails, he may not recover the maximum amount of damages available for his claims.

*See id.* at 28 (recognizing that the class may not recover all available statutory damages even if the plaintiffs prevailed on their claims).

> d.    *Wells Fargo's ability to withstand a greater judgment.*

That a defendant may be able to pay more in settlement does not preclude a finding that the settlement is fair. *See In re Payment Card Interchange Fee*, 2019 WL 6875472, at *27; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) ("this factor, standing alone, does not suggest that the settlement is unfair."). Wells Fargo could withstand a greater settlement, but "a defendant is not required to empty its coffers before a settlement can be found adequate." *Fleisher*, 2015 WL 10847814, at *9 (citation omitted).

> e.    *The effectiveness of distributing relief to the class, including the method of processing class member claims, if required.*

This factor considers the method for processing class members' claims and allocation of the settlement funds. *In re Payment Interchange*, 2019 WL 6875472, at *20. Settlement Class Members do not have to file claims to receive Cash Award checks. In addition, the pro rata distribution of the Net Settlement Fund is fair to all Class Members. *See id.* (noting that "[c]ourts frequently approve plans involving *pro rata* distribution" and citing cases); *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (a pro rata allocation plan "appears to treat the class members equitably, faced no objections from class members, and has the benefit of simplicity"). Each TILA Settlement Class Member will receive a pro rata share of the $250,000 TILA statutory damages based on the number of Qualifying Loans they have, and all Settlement Class Members will receive a pro rata share of the Remaining Net Settlement Fund based on their actual damages. Settlement Agreement ¶ 70.

f.    *The terms of any proposed award of attorneys' fees.*

Class Counsel filed a motion for Court approval of an award of attorneys' fees in the amount of one-third of the settlement fund, or $2,314,800, and reimbursement of $17,087 in litigation costs. ECF Nos. 97-100. In the motion, Class Counsel explain why the requested fee award is reasonable, in line with the Second Circuit's requirements for approval, and consistent with fees awarded in similar cases by district courts in the Second Circuit. In addition, the settlement is not dependent on the Court's approval of any amount of fees or costs. *See* ECF No. 92-1 (Settlement Agreement) at ¶ 119.

4.    <u>The settlement treats all Settlement Class Members fairly.</u>

All Settlement Class Members will be treated fairly by the settlement. The pro rata distribution of the Net Settlement Fund ensures that all Class Members receive their fair share of the recovery. This factor therefore favors approval of the settlement.

5.    <u>The reaction of the Settlement Class.</u>

The reaction of the Class to a settlement "is perhaps the most significant factor to be weighed in considering its adequacy." *In re Payment Card Interchange*, 2019 WL 6875472, at *16 (citation omitted). "In fact, the lack of objections may well evidence the fairness of the Settlement." *Id.* (citation omitted); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) ("A favorable reception by the class constitutes 'strong evidence' that a proposed settlement is fair." (citation omitted)). Here, all proposed Class Members were able to learn their estimated pro rata share of the settlement at the time notice was issued. No Class Member objected to the settlement and only five chose to opt out. The lack of even a single objection and the small number of opt outs supports final approval.

**B.    The Settlement Class should be finally certified.**

The Court conditionally certified the Settlement Class for settlement purposes when it granted preliminary approval of the settlement. For the same reasons, the Court should finally certify the Settlement Class for settlement purposes now.

1.    <u>The Rule 23(a) requirements are satisfied.</u>

The Rule 23(a) requirements of numerosity, commonality, typicality and adequacy are satisfied.

**Numerosity.** A class is deemed sufficiently numerous if it consists of at least 40 members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). There are 16,382 Settlement Class Members (10,753 unique borrowers and 5,629 unique co-borrowers) associated with 10,775 loans. Keough Decl. ¶ 5. Accordingly, the numerosity requirement has been satisfied.

**Commonality.** The commonality requirement is satisfied when a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Even a single common question will do. *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 120 (E.D.N.Y. Jan. 5, 2015). The central common questions in this case are whether Wells Fargo has a policy and practice in residential real estate transactions involving rate buydowns of amortizing loans at a higher rate during the initial period despite disclosing that a lower interest rate applies during that period and, if so, whether this practice is lawful. These common questions are central to the TILA and breach of contract claims and the answers to these questions can be determined on a classwide basis, satisfying the commonality requirement. *See*

ECF No. 46 at 24-25 (Report and Recommendation on Wells Fargo's motion to dismiss or, in the alternative, to strike class allegations).

**Typicality.** The typicality requirement requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936–37. Typicality is "not highly demanding." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (citation omitted). Here the typicality requirement is satisfied because Plaintiff's and Class Members' claims all arise from the same course of conduct by Wells Fargo and turn on the same legal arguments. *See* ECF No. 46 at 26.

**Adequacy.** As discussed above, the adequacy requirement is satisfied.

2.    The Rule 23(b)(3) requirements are satisfied.

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011). Both requirements are satisfied.

**Predominance.** Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted). This case is particularly well suited for settlement class treatment because the focus of the claims is on Wells Fargo's alleged conduct. As discussed above, a central common question in this case is whether Wells Fargo allegedly improperly amortizes loans involving rate buydowns by applying a greater interest rate than promised. Additional common questions include whether Wells Fargo allegedly mischaracterizes buydown funds as paid by the Class member or combines the buydown funds with other loan costs in its disclosures, whether Wells Fargo allegedly violated TILA by providing one interest rate for the initial period of the loans in its disclosures but effectively charging a higher rate due to its method of amortization, and whether Wells Fargo allegedly breached its agreements with Class members by amortizing loans at a higher interest rate during the initial period. If tried, these common questions would turn on generalized proof consisting of the disclosures, internal Wells Fargo documents, and expert testimony. Plaintiff contends that certification is particularly appropriate in this case because standardized forms and procedures govern Wells Fargo's buydown products. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124-26 (2d Cir. 2013) (affirming certification of breach of contract claims where the contracts' relevant terms were materially similar); *see also Kelen v. World Fin. Network Nat'l Bank*, 295 F.R.D. 87, 91, 95 (S.D.N.Y. 2013) (certifying class and noting that "TILA specifically contemplates and allows class actions to address creditors' failures to comply with the statute and applicable regulations").

**Superiority.** Class certification is also "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Superiority is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014). Settlement Class Members are unlikely to be willing or able to pursue relief on an individual basis, making classwide settlement the superior method of resolving these claims. *See Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 76 (S.D.N.Y. 2018) ("It is unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation."). In addition, resolution of all Settlement Class Members' claims relating to the form documents in a single proceeding would promote judicial efficiency and avoid inconsistent opinions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) ("the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). And because the claims are being certified for purposes of settlement, the Court need not consider any manageability issues. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

## C.    The notice program complied with Rule 23 and due process.

The Notice Program approved by the Court and implemented by JND satisfied the requirements of Rule 23 and due process. Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

23(e)(1). When the class is certified under Rule 23(b)(3), the notice must also be the "best notice … practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Court-approved Notice Program satisfied these requirements. The Notices provided Class Members with information about the litigation, the Class, the claims and defenses, how to object, opt out, and appear at the Final Approval Hearing, and the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B); *see also Wal-Mart*, 396 F.3d at 114 (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (citation omitted)). The Notices were drafted so that they could be "understood by the average class member." *Id.* (citation omitted).

On April 22, 2021, JND sent the Mailed Notice to 16,382 Settlement Class Members using addresses available in the records produced by Defendants and updated by JND using data from the National Change of Address and skip-tracing databases. Keough Decl. ¶¶ 6-7, Ex. B. JND performed advanced addressed searches on 492 Mail Notices that were returned as undeliverable. *Id.* ¶ 8. As of August 3, 207 of the Mailed Notices remain undeliverable. *Id.* In total, 16,175 Class Members, or 98.7% of the Class, appear to have received direct notice of the settlement.

On July 21, 2021, JND sent a supplemental notice to 1,424 Class Members who were required to complete a W-9 form because of the amount of their recovery and had not yet done

so. Keough Decl. ¶ 9. The parties are working cooperatively to ensure that JND has the tax information necessary to issue checks to all Settlement Class members. Terrell Decl. ¶ 11.

As required by the Settlement Agreement, JND established a Settlement Website at www.buydownsettlement.com with detailed information about the settlement, including the Long Form Notice, Mailed Notice, First and Second Amended Complaints, Settlement Agreement, Motion for Preliminary Approval, Preliminary Approval Order, and proposed Final Approval Order. *Id.* ¶ 11. JND added a secure "File W-9 Online" page to the Settlement Website so Class Members could enter a unique ID number to fill out and submit a W-9 form, as well as a printable W-9 form that class members could download, print, and mail. *Id.* ¶ 12. JND also included a secure "Settlement Benefits Lookup" page that allows Class Members to use their unique ID number to see their estimated TILA Award Payment, Non-TILA Award Payment, and total estimated Cash Award. *Id.* On May 8, JND added Class Counsel's motion for an award of attorneys' fees, costs, and service award. *Id.* ¶ 13. As of August 3, there were 5,494 unique visitors to the Settlement Website and 17,996 page views. *Id.* ¶ 14.

As of August 3, JND had received and handled 114 emails sent to its settlement email address, info@buydownsettlement.com. *Id.* ¶ 15. JND also received 373 calls on the settlement-specific dedicated toll-free number as of that date. *Id.* ¶¶ 16-18.

Because the Notice Program approved by the Court was faithfully executed by JND and complies with Rule 23 and due process, the settlement should be approved.

//

//

//

//

## IV.    CONCLUSION

Plaintiff requests that the Court grant his motion for final approval of the settlement.


RESPECTFULLY SUBMITTED AND DATED this 5th day of August, 2021.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Beth E. Terrell, *Admitted Pro Hac Vice*
     Beth E. Terrell, *Admitted Pro Hac Vice*
     Email: bterrell@terrellmarshall.com
     Adrienne D. McEntee, *Admitted Pro Hac Vice*
     Email: amcentee@terrellmarshall.com
     Ari Y. Brown, *Admitted Pro Hac Vice*
     Email: abrown@terrellmarshall.com
     936 North 34th Street, Suite 300
     Seattle, Washington 98103-8869
     Telephone: (206) 816-6603
     Facsimile: (206) 319-5450

     Daniel A. Schlanger (4431920)
     Email: dschlanger@consumerprotection.net
     SCHLANGER LAW GROUP LLP
     80 Broad Street, Suite 1301
     New York, New York 10004
     Telephone: (212) 500-6114
     Facsimile: (212) 612-7996

     *Class Counsel*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on August 5, 2021, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

> Jennifer M. Rosa
> Email: jrosa@mayerbrown.com
> Robert W. Hamburg
> Email: rhamburg@mayerbrown.com
> Niketa K. Patel
> Email: npatel@mayerbrown.com
> MAYER BROWN LLP
> 1221 Avenue of the Americas
> New York, New York 10020
> Telephone: (212) 506-2500
> Facsimile: (212) 262-1910
>
> Debra Lee Bogo-Ernst, *Admitted Pro Hac Vice*
> Email: dernst@mayerbrown.com
> Lucia Nale, *Admitted Pro Hac Vice*
> Email: lnale@mayerbrown.com
> Jed W. Glickstein, *Admitted Pro Hac Vice*
> Email: jglickstein@mayerbrown.com
> Lucy L. Holifield, *Admitted Pro Hac Vice*
> Email: lholifield@mayerbrown.com
> Michael Bornhorst, *Admitted Pro Hac Vice*
> Email: mbornhorst@mayerbrown.com
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, Illinois 60606
> Telephone: (312) 782-0600
> Facsimile: (312) 701-7711
>
> *Attorneys for Defendant*

DATED this 5th day of August, 2021.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email: bterrell@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    *Attorneys for Plaintiff*